A98A0846. KOPP v. FIRST BANK OF GEORGIA.
(509 SE2d 384)

McMURRAY, Presiding Judge.

Plaintiff-appellee First Bank of Georgia ("FBG") brought this action for damages, alleging that defendants Jesse T. Hendrix, Jesse T. Hendrix Builders, Inc. ("Builders"), Joseph T. Pecora, and Gerald A. Kopp, individually and as attorney-in-fact for Joseph A. Pecora, acting in concert, fraudulently induced FBG to extend a construction loan secured by two lots of real property while concealing that the property was already subject to unrecorded security deeds. On March 3, 1989, defendant Builders purchased two lots receiving warranty deeds from defendant Joseph T. Pecora, grantor, who simultaneously took back as grantee security deeds to each lot ("the Pecora security deeds"). Builders and defendant Jesse T. Hendrix then obtained from

FBG two $75,000 construction mortgages, each secured by one lot respectively. Upon the default of defendants Jesse T. Hendrix and Builders, FBG accepted on July 20, 1990, a warranty deed to the property in lieu of foreclosure, but also on July 20, 1990, defendant Gerald A. Kopp filed the Pecora security deeds, whereas FBG's warranty deed was not filed until July 24, 1990. FBG ultimately sold each lot, subject to the Pecora security deeds.

After discovery, FBG moved for partial summary judgment as to liability against all defendants. This motion was granted, and in a prior appeal, a majority of this Court affirmed as to defendant Jesse T. Hendrix and defendant Builders, while concluding whether defendants Joseph T. Pecora and Gerald A. Kopp conspired with Jesse T. Hendrix to defraud future potential creditors of Builders was a question of intent for the trier of fact. *Pecora v. First Bank of Ga.*, 217 Ga. App. 190 (1) (457 SE2d 200).

The case was ultimately tried before the superior court without the intervention of a jury. It is undisputed that defendant Gerald A. Kopp did not immediately record the Pecora security deeds executed on March 3, 1989, and it is uncontradicted that FBG exercised due diligence in searching the public records both prior to its extension of credit to defendant Builders and prior to accepting the warranty deed from Builders in lieu of foreclosure. In support of its contention that defendant Gerald A. Kopp conspired to defraud, FBG adduced the following evidence: Gerald A. Kopp is a developer/builder who has taken out as many as 1,500 construction loans. Pursuant to a written power of attorney, Kopp was the attorney-in-fact for defendant Joseph T. Pecora, authorized to sell lots in a particular residential development. Kopp also claimed an interest in the lots through a partnership with defendant Joseph T. Pecora. Through his position as past president of the state home builders' association, Kopp has known defendant Jesse T. Hendrix for about 20 years. Kopp orally agreed to sell Hendrix two lots, at "$16,500.00 per lot. . . . It was supposed to be all cash at closing, . . ." but Kopp ultimately accepted promissory notes for the entire purchase price. The terms of the notes were: "one installment of $9900.00 plus interest sixty days from the date of this instrument and the balance . . . plus all remaining accrued interest . . . due and payable at closing of permanent loan . . . and in no event later than one year. . . ." Hendrix "asked [Kopp] that they [the Pecora security deeds] not be filed immediately . . . [because Hendrix] would like a few days in order to get his supplier contracts lined up, his credit lined up with various suppliers before [Kopp] recorded [the security deeds]. . . ." Kopp conceded that, were he to file the security deeds, "it would show he [Hendrix] did not own those lots free and clear but, instead, would reflect that he owed the full purchase price of the $33,000.00 upon

which he was seeking credit to build. . . ." Kopp understood that Hendrix was "slow on his cash supply at the time. . . ." When the $9,900 installment came due in May 1989, Kopp inquired "when [they] were going to get [their] money. At that time, he [Hendrix] said, 'At my next draw.' [Kopp now knew] that [Hendrix] had a construction loan on the property." Accordingly, Kopp waited for payment until Hendrix and Builders actually received a draw. Hendrix subsequently tendered two checks dated June 9, 1989, drawn on the Builders' account to the order of Joseph T. Pecora, each in the amount of $9,900, with the notation "Part payment per contract." Kopp "[knew] that the money was coming from the construction loan for the building of the houses on [the] lots, [and that] a deed to secure debt securing that construction loan had been recorded." His 20 years' experience gave him reason to "suspect that the bank [which] made the construction loan was unaware the [Kopp's partner, defendant Joseph T. Pecora] held a deed to secure debt or that [Builders] owed the seller] money on that property." He further knew that, if Builders had obtained an "acquisition and development" loan, where the developer "borrow[s] the money both to buy the property and to build on it, . . . then [the seller] would have been paid up front. . . ." In July 1990, Hendrix told Kopp "he was not going to be able to finish those houses[;] that he was going to give them back to the bank[;] and that he offered to give [Kopp] the houses if [the latter] would assume the construction debt to the bank [but Kopp] refused. . . ." On July 20, 1990, Kopp was informed by friendly real estate agents that Hendrix and Builders had given FBG a deed in lieu of foreclosure. The Pecora security deeds were filed that same day.

Jesse T. Hendrix testified that "[i]t was [mutually] understood that [Kopp] would not [file the Pecora security deeds] so [Hendrix or Builders] could obtain the construction loans. . . ." They both understood that "if [Builders] didn't own the lots that more likely than not in the ordinary course of business that a bank or other financial lending institution would not have made a construction loan. . . ." Hendrix confirmed that Kopp "knew that [he, Hendrix,] intended to obtain construction loans from [FBG] at the time [of] the closing . . . on March 3 of 1989, . . . when [Kopp executed] the warranty deeds [to Builders and that Kopp] knew that the purpose of withholding the security deeds from filing [was] so it would appear to [FBG] that [Builders] owned [the] lots . . . free and clear. . . ." In March 1990, when Hendrix informed FBG that Builders would be unable to repay the construction loan, a bank representative proposed "a deed in lieu of foreclosure in order to save [Hendrix's] credit, if there was nothing else owed on those lots." A week before the closing on this proposition, Hendrix spoke with Kopp and told him that if Kopp did not wish

to take over the loans himself, then "the time had come that [Hendrix would go] to the bank and give them a deed in lieu of foreclosure."

In its judgment, the superior court found all defendants jointly and severally liable to plaintiff for actual damages in the amount of $78,254.48 and further found against defendant Gerald A. Kopp for $80,000 in punitive damages and $100,045 as attorney fees and expenses of litigation. This appeal followed. *Held*:

1. The superior court's judgment of liability for conspiracy to defraud future potential creditors of Builders is enumerated as error but is not supported by argument and citation of authority. Consequently, the first two enumerations of error are deemed abandoned in accordance with Court of Appeals Rule 27 (c) (2).

2. In his third enumeration, defendant Gerald A. Kopp objects to the superior court's imposition of $80,000 in punitive damages. In his brief, he argues the superior court cannot impose punitive damages without first holding the bifurcated hearing contemplated by OCGA § 51-12-5.1 (d) (2), and that the procedural irregularity in failing to bifurcate this hearing further deprived defendant of his opportunity to present closing argument.

Defendant has not shown us where, in a record of some 1,200 pages, he urged this procedural objection to the presiding judge. Through counsel, all parties expressly waived a jury trial and further waived any requirement that the superior court make findings of fact and conclusions of law.

Where a case is tried "without a jury, the trial judge has a much broader discretion in the admission of evidence since it is presumed that in his consideration of the evidence he sifted the wheat from the chaff and selected the legal testimony. Thus, [t]his judgment will not be reversed where there is any legal evidence to support [it]. [Cits.]" *Dowling v. Jones-Logan Co.*, 123 Ga. App. 380, 382 (3) (181 SE2d 75). Accord *C & S Bank of Dublin v. Morris State Bldg. Corp.*, 243 Ga. 169, 170 (2) (253 SE2d 89). In our view, defendant's failure to object after the entry of judgment amounts to a waiver of the special interrogatory to the jury mandated by OCGA § 51-12-5.1 (d) (1). See *Martin v. Williams*, 215 Ga. App. 649, 651 (2) (451 SE2d 822); *Shaw v. Ruiz*, 207 Ga. App. 299, 300 (1) (428 SE2d 98). Similarly, oral argument was waived by the use of post-trial briefs submitted for the superior court's consideration. The third enumeration is without merit.

3. Next, defendant contends the award of attorney fees is unsupported by any evidence of stubborn litigiousness. But the complaint clearly alleges that the costs of litigation were sought on the basis of "[d]efendants' conspiracy in fraudulently inducing [FBG] to accept a warranty deed from Defendant Builders in lieu of foreclosure [while simultaneously] intentional[ly] withholding . . . the Pecora Security

Deeds from recordation. . . ." "[E]very intentional tort[, such as fraud,] invokes the species of bad faith that under the provisions of Code [Ann.] § 20-1404 [now OCGA § 13-6-11] entitles the person wronged to recover the expense of litigation involving attorney's fees." *Dodd v. Slater*, 101 Ga. App. 358, 360 (3) (114 SE2d 167). "If, as here, there is bad faith in the [transaction], [OCGA § 13-6-11] attorney fees are authorized regardless of whether a bona fide controversy otherwise existed between the parties. See *Backus Cadillac-Pontiac v. Brown*, 185 Ga. App. 746, 747 (365 SE2d 540)." *McDonald v. Winn*, 194 Ga. App. 459, 460 (2) (390 SE2d 890).

4. The fifth enumeration contends the trial court erred in admitting, over objection, plaintiff's Exhibit 27 consisting of 52 pages itemizing actual attorney fees incurred in the prosecution of these claims. The record shows that, after voir dire of Robin Lee Bring, the firm administrator, defendant's only stated objection was not to the admission of the billing statement itself; rather, he objected to preliminary inquiries as "leading questions." The trial court allowed them as "foundation questions, they have got to be asked."

Whether to permit leading questions is a matter committed to the sound legal discretion of the trial court, whose decisions "will not constitute reversible error 'unless palpably unfair and prejudicial to the complaining party.' [Cits.]" *Clary Appliance &c. v. Butler*, 139 Ga. App. 233, 235 (2) (228 SE2d 211). In the case sub judice, the trial court did not abuse its discretion in permitting leading questions to establish the foundation for the admissibility of a billing statement as a business record.

*Judgment affirmed. Blackburn and Eldridge, JJ., concur.*

DECIDED NOVEMBER 17, 1998 —
RECONSIDERATION DENIED DECEMBER 2, 1998 ▮▮▮▮▮▮▮

*Albert B. Wallace, Stephen B. Wallace II*, for appellant.
*Eidson & Associates, James A. Eidson*, for appellee.