## A98A1414. SCRIVER v. LISTER et al.
### (510 SE2d 59)

POPE, Presiding Judge.

Appellant Richard Scriver appeals from a default judgment entered against him in the total amount of $813,620. This is the second appearance of this matter before this Court. The case was first appealed after the trial court granted Scriver's motion for judgment notwithstanding the verdict and his alternative motion for a new trial following a jury verdict in the plaintiffs' favor. In *Lister v. Scriver*, 216 Ga. App. 741, 746-747 (456 SE2d 83) (1995),[1] we reversed the trial court's grant of the motion for j.n.o.v., but affirmed the grant of the motion for new trial.

The re-trial was specially set for May 19, 1997. On February 10, 1997, the counsel who had represented Scriver throughout the proceeding moved to withdraw. In connection with that motion, counsel notified Scriver of the scheduled trial date and further that he could suffer adverse consequences if he did not hire other counsel and prepare for trial. The trial court granted the motion for leave to withdraw on February 11, 1997, and on February 20, 1997, counsel for Thomas J. Lister, one of the plaintiffs, was also granted leave to withdraw. None of the parties moved for a continuance following

---

[1] A full description of the underlying facts of this case appears in that decision.

these withdrawals, and the special setting remained on the calendar. No other counsel entered an appearance for Scriver prior to the trial date.

On the scheduled day, only one of the parties, plaintiff 690019 Ontario, Ltd. ("Ontario") appeared. Because Scriver was not present and no counsel appeared on his behalf, the trial court granted Ontario's motion to dismiss Scriver's answer and counterclaim. The matter proceeded to a non-jury trial after Ontario waived its jury demand and Norman Burkoski, Ontario's secretary-treasurer, was the only witness. At the conclusion of the evidence, the trial court awarded Ontario $278,620 in actual damages, $35,000 in attorney fees and $500,000 in punitive damages.

Judgment was entered on June 9, 1997, and within three days Scriver filed a motion for new trial or, in the alternative, to set aside the judgment. The trial court denied Scriver's motions, and he appeals.

1. Scriver contends that the trial court erred in denying his motions because the court's decision to proceed to trial without two of the three parties caused an intrinsic defect in the proceedings. See OCGA § 9-11-60 (c) and (d) (3). He further contends that this non-appearance was the result of fraud, accident, mistake or the acts of the adverse party. See OCGA § 9-11-60 (d) (2).

In support of his post-trial motions, Scriver submitted his affidavit stating that prior to trial he had received "express information" that Ontario and the other plaintiff did not intend to go forward with the case. Based on this information, Scriver stated he did not hire counsel until April 1997 when he engaged attorney Scott Kaplan to appear at the scheduled trial date and move for a dismissal for want of prosecution. But Scriver's affidavit does not identify the source of this information or even assert that the information came from the plaintiffs themselves.

Attorney Kaplan also submitted an affidavit confirming that Scriver had retained him and explaining that he was unable to appear because his father had a medical emergency on the morning of the trial requiring him to make "serious and far-reaching medical decisions." Yet nothing in the record indicates that Kaplan or Scriver attempted to notify the trial court of Kaplan's situation either on the day of trial or in the intervening 20 days between the scheduled trial date and the entry of judgment. Therefore, despite his prior counsel's admonitions and in reliance on information from an unspecified source, Scriver waited until the month before trial to hire new counsel. And rather than instructing his new counsel to prepare for trial, Scriver simply directed him to appear and move for a dismissal or a continuance if the plaintiffs chose to appear. And apparently neither Scriver nor his counsel attempted to ascertain the outcome of the

scheduled trial prior to the entry of the judgment 20 days later.

Scriver's negligence in failing to prepare for trial and his, and his counsel's, lack of diligence in following the progress of the proceedings do not equate with an intrinsic defect necessitating a new trial. Moreover, "[a] judgment cannot be set aside in equity unless its rendition is unmixed with the negligence or fault of the complainant, as this judgment obviously was not. Consequently, with regard to default judgments, a motion to set aside cannot be granted when it fails to show not only a meritorious defense but a legal excuse for his non-appearance." (Citations and punctuation omitted.) *Brunswick Gas &c. Co. v. Parrish*, 179 Ga. App. 495, 496 (2) (347 SE2d 240) (1986). Scriver has shown no legal excuse for his non-appearance at trial. Under these circumstances, we find that the trial court did not abuse its discretion in denying Scriver's motions. See *LaSonde v. A & E Real Estate Sales &c.*, 231 Ga. App. 754 (1) (500 SE2d 636) (1998); *Aycock v. Hughes*, 189 Ga. App. 838 (1) (377 SE2d 689) (1989); *Archer v. Monroe*, 165 Ga. App. 724, 725 (1) (302 SE2d 583) (1983); cf. *Kraft, Inc. v. Abad*, 262 Ga. 336 (417 SE2d 317) (1992).

2. Scriver also contends that the evidence failed to support the trial court's award of damages. "In a claim alleging that a business was damaged because the defendant breached his fiduciary duty to the business, the [trier of fact] must be given a reasonable basis upon which to calculate the amount of damage due to the breach. [Cit.]" *Holland v. Holland Heating &c.*, 208 Ga. App. 794, 796 (2) (432 SE2d 238) (1993). "[I]f a plaintiff can show with reasonable certainty the total amount of damages and the degree to which those damages are attributable to defendant, that is sufficient to support an award." *CRS Sirrine, Inc. v. Dravo Corp.*, 219 Ga. App. 301, 303 (1) (464 SE2d 897) (1995).

Burkoski, Ontario's secretary-treasurer, testified at bench trial that the corporation made an initial investment of $100,000 in the enterprise proposed by Scriver based upon his assurances that Scriver and Ontario would be 50-50 partners, with Scriver also investing $100,000, and that Scriver personally would operate the business. Scriver never put up his share of the capitalization and, instead, hired someone else to run the business. Also, unbeknownst to Ontario, Scriver sold this individual 25,000 shares in the company. The company later paid Scriver an additional $15,000 to purchase a franchise, but Scriver used the proceeds to purchase the franchise for one of his own businesses. The evidence further showed that Scriver borrowed $80,000 on behalf of its enterprise with Ontario, but retained $67,000 of that money for his own personal use. Burkoski also testified that Scriver acquired $25,000 from the commercial complex in which the enterprise was located, which he converted to his own use. To finance its share of the capitalization Ontario took

out loans on other property, as did Burkoski, upon which interest has been paid. Burkoski summarized that including the original investment, the monies paid for the franchise, travel expenses, Ontario's share of the corporate opportunities usurped by Scriver, and interest paid in the intervening years on loans, Ontario had suffered actual damages in the amount of $278,620. This evidence is sufficient to support the trial court's award of actual damages. See generally *CRS Sirrine, Inc. v. Dravo Corp.*, 219 Ga. App. at 303; *Gaines v. Crompton & Knowles Corp.*, 190 Ga. App. 863, 864-865 (1) (380 SE2d 498) (1989).

3. Additionally, the trial court found that evidence of Scriver's fraud and bad faith warranted an award of attorney fees under OCGA § 13-6-11. Burkoski testified and Ontario's counsel stated in his place that through almost ten years of protracted litigation and the earlier appeal process, Ontario had incurred $35,000 in attorney fees. We find that the award of attorney fees is supported by the evidence. See *Floyd v. First Union Nat. Bank &c.*, 203 Ga. App. 788, 792 (3) (417 SE2d 725) (1992); *Shaw v. Lawrence P. Vickers & Assoc.*, 162 Ga. App. 97, 98-99 (290 SE2d 186) (1982).

4. Scriver also contests the trial court award of $500,000 in punitive damages. The trial court found that the cause of action in this case arose from Scriver's actions in 1985 and 1986; therefore, this case is not subject to the current $250,000 cap on punitive damage awards. OCGA § 51-12-5.1 (g) and (h). Based upon the evidence, the trial court concluded that Scriver's actions showed wilful misconduct, fraud, wantonness and the entire want of care which would raise the presumption of conscious indifference to the consequences of his conduct, and awarded punitive damages in an amount less than twice the actual damages in the case. Accordingly, we find no error in the award of punitive damages. See generally *Hill v. Johnson*, 210 Ga. App. 824, 825 (437 SE2d 801) (1993); *Hulsey Pool Co. v. Troutman*, 167 Ga. App. 192, 194 (2) (306 SE2d 83) (1983).

*Judgment affirmed. Beasley and Ruffin, JJ., concur.*

Decided November 30, 1998 ▮▮▮▮▮▮▮▮▮

*Arnall, Golden & Gregory, James R. Evans, Alison R. Solomon, Scott H. Kaplan*, for appellant.
*Teddy R. Price*, for appellees.