A99A0420, A99A0421. KENT v. BROWN; and vice versa.

(518 SE2d 737)

BARNES, Judge.

Attorney L. B. Kent appeals a jury verdict against him for expert witness fees, attorney fees, and expenses of litigation. He asserted in 13 enumerations that the trial court erred in striking his counterclaim, giving certain jury charges, making certain evidentiary rulings, trying the case without proper jurisdiction, and denying a motion for directed verdict. David G. Brown, P.E., Inc. ("Brown") cross-appeals the trial court's denial of his demand for pre-judgment interest. For the reasons that follow, we affirm in both cases.

Brown sued Kent in magistrate's court for $5,000 in expert witness fees. Kent counterclaimed for damages in the amount of four times the fees sought, which exceeded the court's jurisdictional limit. The case was then transferred to state court, and Brown recast his complaint to allege stubborn litigiousness and bad faith. Brown moved to dismiss Kent's counterclaim, and the state court granted the motion, concluding the statute under which Kent proceeded did not apply. This Court denied Kent's motion for an interlocutory appeal and dismissed his direct appeal of the same issue. A state court jury heard the case and awarded Brown $5,200 for his witness fees along with $15,150 for his attorney fees and $400 for expenses of litigation.

This controversy arose out of a disputed bill for expert witness fees. The evidence presented at trial established that Kent contacted Brown first and asked him to make a preliminary review of another expert's assessment of an automobile collision that resulted in two personal injury suits. The parties agreed on a $300 fee, and Brown· conducted the preliminary review. From that point on, the parties disagree about many details of the subsequent transactions. They do agree that Brown testified at a deposition in the underlying personal injury suit, was paid for his deposition time by opposing counsel, and then testified at trial on behalf of Kent's client.

Brown testified that, in the initial telephone call with Kent, he told the lawyer his rate was $150 an hour. He stated that Kent explained to him that another expert witness had testified at trial in a companion case that resulted in a defense verdict, and he wanted Brown to look at the other expert's conclusions. He agreed to review Kent's documents and to hold the cost to $300 for that initial review.

After receiving and reviewing the documents, Brown said he called Kent and told him that from this brief analysis, he thought he basically agreed with the other expert's conclusions, but if Kent wanted him to proceed, he would have to do more work. Kent told him to "go ahead" with a detailed analysis, Brown testified, and told him opposing counsel would want to take his deposition. Brown then

outlined the numerous tasks involved in the detailed analysis he performed of the automobile collision in Kent's personal injury case, including visiting the scene of the wreck to measure the roadway, making a scaled diagram of the scene, performing computer simulations to determine how the vehicles ended up in their final positions, and enlarging his diagrams for Kent to use for trial exhibits.

After Brown completed his analysis, he said he called Kent to tell him the results and then prepared for the deposition. Opposing counsel took his deposition, and Kent followed up with at least an hour of questioning. All the deposition time was billed to opposing counsel, including the time spent answering Kent's questions, and opposing counsel paid that bill. Brown then billed Kent for the time spent analyzing the collision, along with various expenses, after which he and Kent exchanged calls and letters about Brown's appearance at the upcoming trial in Columbus and further preparation for that trial.

During this time, Kent never disputed his first bill for $3,009, Brown testified. Brown prepared for trial and met with Kent in person on the morning of trial to review his exhibits and proposed testimony. He waited as the trial got underway, testified for several hours, then returned to Atlanta from Columbus. The next day he sent Kent his final bill, and a week later received a letter from Kent in response advising him the jury returned a defense verdict. Brown testified that he followed up with two more letters seeking payment, then talked to Kent by phone more than three months after trial. He said Kent told him he did not win any money, he was broke, and either could not or would not pay the bill. Brown sent two more letters seeking payment, then filed suit in magistrate's court.

Kent's version of events is that he agreed to pay Brown only $300 to review material, that he had not agreed to pay for time Brown spent preparing for a deposition called by opposing counsel, and that Brown asked him at the deposition if he could come to trial and testify against the other side's expert witness, because he disagreed so strenuously with the expert's conclusions. Kent subpoenaed Brown after he asked to come to trial, "because [he] didn't want any question about charging [his] poor client any of his fees." Brown denied he was served with the subpoena and denied volunteering to testify as Kent described.

### Case No. A99A0420

1. In his first enumeration, Kent argues the trial court erred in dismissing his counterclaim for quadruple fees pursuant to OCGA § 24-10-4. This statute provides that "[a] witness who claims more than is due to him shall forfeit all his fees and shall pay to the

injured party, in addition thereto, four times the amount so unjustly claimed." Kent claimed that, because he subpoenaed Brown after Brown asked to testify at trial, he did not owe Brown's expert witness fees; thus, Brown was claiming "more than is due to him."

In a well-reasoned opinion, the trial court traced the statute's history and analyzed the single appellate court decision addressing OCGA § 24-10-4. In *Nationwide Mut. Ins. Co. v. Glaccum*, 186 Ga. App. 148, 150 (1) (366 SE2d 772) (1988), Nationwide Mutual Insurance Company subpoenaed the plaintiff's treating chiropractor to testify at trial, tendering to him the statutory witness fee and mileage. After trial, the chiropractor billed the company for $2,000 in expert witness fees. Nationwide moved for an order under OCGA § 24-10-4 requiring the doctor to pay $8,000, or four times the amount claimed. The trial court denied Nationwide's motion, ruling the doctor appeared at trial as an expert and was entitled to the fee he claimed. This Court reversed, holding that "in view of the fact Dr. Glaccum was not asked to conduct any preliminary examination or review of his records in order to better give his opinion as an expert, he was not entitled to demand extra compensation for attendance in court pursuant to the subpoena." Id. at 150. We remanded the case for consideration of Nationwide's motion under OCGA § 24-10-4.

In this case, however, Brown was asked to conduct a preliminary review of evidence in order to better give his opinion as an expert. Thus he was entitled to demand extra compensation for attendance in court pursuant to the subpoena, and the trial court did not err in dismissing Kent's counterclaim.

2. Kent contends the trial court erred in seven of its charges to the jury. "[I]t is a fundamental rule that jury instructions must be considered as a whole in determining whether there was error in the charge." (Citations and punctuation omitted.) *Leslie v. Williams*, 235 Ga. App. 657, 659 (2) (510 SE2d 130) (1998). It is the trial court's duty

> to charge the jury on the law applicable to the issues where there is any evidence on which to predicate the instructions. Further, it is well established an instruction is not abstract or inapplicable where there is any evidence, however slight, on which to predicate it.

(Citations and punctuation omitted.) *Southern Bell Tel. &c. Co. v. Don Hammond, Inc.*, 198 Ga. App. 517, 518 (402 SE2d 112) (1991).

(a) Kent alleges the trial court erred in charging the jury based on OCGA § 24-10-24 as follows:

[W]hen a witness resides outside the county where the testi-

mony is to be given, service of the subpoena, to be valid, must be accompanied by tender of to [sic] fee for one day's attendance plus mileage of 20 cents per mile for traveling expenses for going from and returning to his place of residence by the nearest practical route.

Kent claimed at trial that, because he subpoenaed Brown to appear and testify, he did not owe him expert witness fees. Brown's attorney asked Kent at trial whether he had tendered to Brown a witness fee and mileage so the subpoena would be valid, and Kent responded he did not have to tender that money because Brown "wanted to come." The trial court on its own motion charged the jury on the law regarding the validity of a subpoena served on a witness who lives outside the county where the trial is held.

Whether the subpoena was served properly on Brown was an issue at trial, and the trial court did not err in charging the jury on the law as written. *Southern Bell Tel. &c. Co. v. Don Hammond, Inc.,* supra, 198 Ga. App. at 518.

(b) Kent enumerates as error the following charge: "If one engages another to do work and you find it has been done or performed and you find that the parties agreed to consideration or compensation for that work, then the party engaging the work is, in all [sic], liable for the agreed consideration or compensation." He asserts the charge "was objected to as argumentative, no agreement, no consideration and not adjusted to the evidence," and proceeds to argue evidentiary matters and inapplicable case law. The charge is a correct proposition of law. *Jenks v. Liepman Contracting Co.*, 99 Ga. App. 823, 825 (1) (109 SE2d 610) (1959). A central issue before the jury in this case was whether Kent and Brown had entered into an oral agreement. Viewing the charge as a whole, we conclude the trial court did not err in giving this particular charge.

(c) Kent contends the trial court erred in charging the jury that "[d]amages are given as a pay or compensation for injury done," arguing this measure of damages is not applicable here. The trial court charged almost the exact language of OCGA § 13-6-1, which provides that "[d]amages are given as compensation for the injury sustained *as a result of the breach of a contract.*" (Emphasis supplied.) While the trial court left out the italicized portion of the statute indicated above, it immediately charged the jury that "damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from the breach, and such as the parties contemplated when the contract was made, as the probable result of the breach."

"We find no error in giving instructions as to the general principles regarding the recovery of damages in a contract case where, as

here, there is no contention that the proper measure of those damages was not also given." *Canal Ins. Co. v. Bryant*, 173 Ga. App. 173, 175 (3) (325 SE2d 839) (1984). Here the trial court charged the general principles and also charged specifically that damages are "such as arise naturally from the breach." Again viewing the charge as a whole, we cannot say the charge as given was incorrect or misleading. *Leslie v. Williams*, supra, 235 Ga. App. at 659.

(d) Kent argues the trial court erred in giving the following charge because no evidence supported it: "If an account is rendered to the debtor on a valid contract and he fails to object to it, a jury may be authorized to infer that the failure of the debtor to raise an objection was an implied agreement that the account was correct." To the contrary, Brown presented evidence at trial that he billed Kent for $3,009 after attending a deposition and for another $2,178.40 after he testified at trial. Brown testified that Kent not only never objected to the bills, but exchanged numerous letters and phone calls with Brown regarding the upcoming trial after receiving the first bill for $3,009. We conclude the trial court did not err in giving this charge.

(e) Kent further asserts that the trial court erred in a charge based on OCGA § 9-2-7 as follows: "Ordinarily, when one renders service or transfers property which is valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof." Kent objected to the charge on the grounds that no evidence showed "that any service that was rendered to another was valuable to another and there has certainly been no evidence that those disputed services were accepted."

Contrary to Kent's argument that no evidence supports the charge, Brown testified that he analyzed the collision in depth after his preliminary analysis, both to be prepared to give a deposition and to assist Kent in cross-examining the other side's expert witness. Kent, as well as opposing counsel, questioned him at the deposition. Brown further testified that Kent never commented on his post-deposition bill, but instead conferred with him at length regarding his upcoming trial testimony.

This Court has held that OCGA § 9-2-7 embodies "a fundamental principle in determining liability under an implied contract." *Delta Corp. v. Knight*, 109 Ga. App. 3, 6 (3) (135 SE2d 56) (1964) (reversing trial court for failing to give required charge on this "fundamental principle"). The issue of implied contract was before the jury, and we find the trial court did not err in giving the charge.

(f) Kent argues that the trial court erred in charging the jury on estoppel as follows:

An estoppel arises where a party has so acted that he has by his conduct either gained some advantage for himself or

caused some disadvantage to accrue to another, by reason of which it would be contrary to equity and good conscience to permit him thereafter to deny an obligation based upon such conduct. If a party to a valid contract seeks to avoid it on any grounds, he must, upon discovery of the facts, at once announce his purpose and adhere to it. Otherwise he cannot avoid or rescind such contract.

Kent argues "there is no evidence of a contract and no evidence of anybody trying to avoid a contract," and further argues that the case presented no issue of estoppel. To the contrary, Brown presented substantial evidence of a contract for expert witness analysis at $150 an hour, as outlined earlier, and presented evidence that Kent tried to avoid the contract for services by claiming that he did not owe Brown for his time because Brown volunteered to testify at trial.

"[P]romissory estoppel claims are extremely fact-specific and are not susceptible to the application of generalized rules." *Doll v. Grand Union Co.*, 925 F2d 1363 (11th Cir. 1991). In *Kamat v. Allatoona Fed. Sav. Bank*, 231 Ga. App. 259 (498 SE2d 152) (1998), we reversed a summary judgment grant to a defendant on a promissory estoppel count, noting that

[t]o prevail on a promissory estoppel claim, plaintiffs must show that (1) defendant made certain promises, (2) defendant should have expected that plaintiffs would rely on such promises, (3) the plaintiffs did in fact rely on such promises to their detriment, and (4) injustice can be avoided only by enforcement of the promise. [Cits.]

Id. at 263 (3).

Brown testified that Kent promised to pay him; Kent should have expected Brown to rely on that promise to pay; and Brown testified for Kent's client at deposition and at trial based on that promise to pay. Compare *Gainesville Glass Co. v. Don Hammond, Inc.*, 157 Ga. App. 640, 645 (2) (278 SE2d 182) (1981) (estoppel charge error because no evidence appellant remained silent after appellee insisted that work be completed pursuant to the alleged oral contract). Since the evidence authorized an estoppel charge, we find the trial court did not err in giving it.

(g) Kent objects to the trial court's charge on litigation expenses, bad faith, stubborn litigiousness, trouble and expense, and attorney fees, asserting that Brown laid no foundation for the charge. He further asserts the charge was argumentative and did not define the terms contained within it. The charge as given, which paraphrases OCGA § 13-6-11, reads:

The expenses of litigation are not generally allowed as a part of the damages. But, if the Defendant has acted in bad faith or has been stubbornly litigious, or has caused the Plaintiff unnecessary trouble and expense, you may allow them. You should determine from the evidence the attorney's fees or other expense, if any, as will be allowed.

While it is true, as Kent argues, that the evidence must show "more than a mere breach of contract" to warrant attorney fees, *Pulte Home Corp. v. Woodland Nursery &c.*, 230 Ga. App. 455, 458 (4) (496 SE2d 546) (1998), "[q]uestions concerning bad faith, stubborn litigiousness, and unnecessary trouble and expense, under OCGA § 13-6-11, are generally questions for the jury to decide." (Citations and punctuation omitted.) *American Med. Transport Group v. Glo-An*, 235 Ga. App. 464, 467 (3) (509 SE2d 738) (1998).

Here, Brown laid a foundation for the charge, introducing evidence that showed more than mere breach. He outlined his attempts to collect his fee and placed into evidence numerous letters and invoices he sent to Kent. Brown testified that, when he called Kent to inquire about payment several months after submitting his bills, Kent said "I didn't win any money. It was a defense verdict and he said I'm broke . . . and then he said I can't or I won't pay your bill. It was either can't or won't." After further attempts to collect, Brown said he finally sued Kent in magistrate's court for $5,000, being willing to forgive $180 out of his total bill so he would not exceed the court's jurisdiction. Shortly thereafter, Kent counterclaimed for four times the amount of the fees, and the case was transferred from magistrate's court to state court. Brown testified that, at that point, he hired a lawyer to represent him.

After Brown laid a proper foundation, the trial court admitted the invoices of Brown's lawyer into evidence. Those invoices covered, among other things, the transfer of the case from magistrate to state court, the amendment to the complaint seeking attorney fees, the motion to dismiss Kent's counterclaim, the interim appeals to this Court, and the trial.

We find the charge was warranted by the evidence. *Scriver v. Lister*, 235 Ga. App. 487, 490 (3) (510 SE2d 59) (1998). We further conclude that the charge, which closely tracks the language of the statute, is not argumentative. *Dept. of Transp. v. Edwards*, 267 Ga. 733, 738 (2) (482 SE2d 260) (1997). The trial court committed no error in charging the jury as set out above.

3. Kent contends the trial court did not have jurisdiction to try the case, arguing that this Court's remittitur had not been filed in the trial court when the trial began. We find no error.

Kent had filed an application for discretionary appeal in this

Court, seeking review of the trial court's dismissal of his counter-claim. That application was denied on December 3, 1997, and the remittitur was filed in the Muscogee County clerk's office on December 5, 1997. He also filed a direct appeal, which this Court dismissed on January 7, 1998. That remittitur was filed in the Muscogee County clerk's office on February 19, 1998. Since the denial of the interlocutory appeal was filed well before trial began on February 18, 1998, Kent's argument that the trial court lacked jurisdiction must be based on his direct appeal. However, the dismissal of a counter-claim is not directly appealable, and this Court never obtained jurisdiction over the case as a result of Kent's direct appeal. *Kilgore v. Kennesaw Finance*, 128 Ga. App. 120 (195 SE2d 799) (1973). Therefore, the trial court retained jurisdiction and did not err in proceeding with the case. *Gillis v. Goodgame*, 199 Ga. App. 413, 414 (1) (404 SE2d 815) (1991), rev'd on other grounds, 262 Ga. 117 (414 SE2d 197) (1992).

4. Kent enumerates as error the trial court's denial of his motion for directed verdict on Brown's claim of express contract. He argues that he never testified that he had an express contract or agreement, and that Brown merely claimed he said he would have to do more work at $150 an hour.

We affirm a trial court's denial of a directed verdict motion if any evidence exists to support the non-moving party's claim. *Candler v. Davis & Upchurch*, 204 Ga. App. 167, 170 (4) (b) (419 SE2d 69) (1992). Here, Brown testified regarding his conversations and exchanges of letters with Kent, evidence that supports his claim that the two had an express contract. We find that the trial court did not err in denying Kent's motion for directed verdict.

5. Kent's next enumeration is that the trial court erred in admitting similar transaction evidence. We disagree.

> Similar acts are admissible in evidence, if committed or proposed at or about the same time, and when the same motive may reasonably be supposed to exist, with a view to establish the intent of the defendant in respect to matters charged against him in the petition. . . . Intent, good faith, motive, and other such matters relating to the state of a person's mind are usually not easily susceptible of direct proof. But frequently the state of mind accompanying the doing of an act is illustrated by other acts of a similar nature, done or proposed by the defendant in such a way as to indicate a general practice or course of conduct, or as to display motive, knowledge, intent, good faith, bad faith, and a variety of other such things. . . .

(Citations and punctuation omitted.) *Candler v. Davis & Upchurch*, supra, 204 Ga. App. at 169.

The trial court in this case allowed testimony that Kent had hired another engineer for another case involving the same accident that Brown reconstructed and then also refused to pay him. "In light of the similarity of the transactions involved and the issue of bad faith, we cannot say that the trial court abused its discretion in finding that the evidence of similar transactions was relevant and should be heard by the jury." *Candler v. Davis & Upchurch*, supra, 204 Ga. App. at 169. Accordingly, we find no error.

6. Kent asserts the trial court erred in reading case law to the jury and in denying his motion for mistrial. The alleged error arose just before a break in the trial. Kent told the court he "needed to put something on the record in front of the jury," and moved to strike the other engineer's testimony, arguing among other things it was irrelevant. In denying the motion, the trial court suggested he read a particular case. Kent continued with his motion, asserting the testimony should be struck because it impermissibly put his character into issue. At that point, the trial court read an excerpt from an appellate court opinion.

> Where a party voluntarily adopts a certain form of procedure or agrees to the manner in which his rights shall be submitted for determination in the trial court, he will not be permitted to complain, on appeal or error, that proceedings had in conformity thereto were erroneous.

(Citation and punctuation omitted.) *Le Twigge, Ltd. v. Wammock & Co.*, 187 Ga. App. 446, 448 (370 SE2d 631) (1988). Kent specifically said he wanted to make his motions before the jury and therefore will not now be heard to complain about the statements the trial court made in resolving this motion.

7. Finally, Kent contends the trial court erred in denying his motion for mistrial after an attorney testified that the number of hours and the rate charged by Brown's lawyer were reasonable. More particularly, he objects to the witness's response to a question regarding his review of the reasonableness of the itemized charges and file summary. The witness testified that, in order to determine the reasonableness of the fee, he had to analyze the background of the case, and concluded

> [t]he time spent had to be spent and it shouldn't have had to be spent. It's ridiculous. It started out as a simple lawsuit to collect a bill and it's turned out to be a Federal case, even though we're not in Federal Court. . . . [Brown] has to go

get a lawyer and then it just gets worser and worser. They then just jerk one another around in the Magistrate Court and then finally they get an appeal to the Georgia Court of Appeals on two different routes. . . . The time that had to be spent shouldn't have had to be spent is what I'm saying.

After the witness concluded, Kent objected to the response on the grounds that it was "totally irrelevant" and "extremely prejudicial to the jury," and moved for a mistrial. The trial court overruled his objection and denied his motion.

"It is well-settled that an award of attorney fees is to be determined upon evidence of the reasonable value of the professional services which underlie the claim for attorney fees." *Southern Cellular Telecom v. Banks*, 209 Ga. App. 401, 403 (1) (433 SE2d 606) (1993). The expert witness here testified that the fees Brown incurred were reasonable and properly took into account "the litigation history of the case." *First Bank of Clayton County v. Dollar*, 159 Ga. App. 815, 817 (4) (285 SE2d 203) (1981). We find no error in the trial court's denial of Kent's motion for a mistrial here.

## Case No. A99A0421

Brown cross-appeals the trial court's denial of his demand for interest on $5,200 awarded on his contract claim. The trial court found that the amount due to Brown under the contract was disputed and, therefore, the damages were not liquidated.

OCGA § 7-4-15 provides: "All liquidated demands . . . bear interest from the time the party shall become liable and bound to pay them." "The word 'liquidated' as used in the statute means 'settled, acknowledged, or agreed.' " (Citations and punctuation omitted.) *Jennings Enterprises v. Carte*, 224 Ga. App. 538, 541 (4) (481 SE2d 541) (1997). In the case before us, Kent did not agree that a certain amount was owed to Brown, and Brown introduced expert testimony to establish the reasonableness of his rate and hours. We find no error in the trial court's denial of Brown's request for pre-judgment interest.

*Judgments affirmed. Blackburn, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED MAY 28, 1999 —
RECONSIDERATION DENIED JUNE 23, 1999 — CERT. APPLIED FOR.

*L. B. Kent*, pro se.

*Hatcher, Stubbs, Land, Hollis & Rothschild, William B. Hardegree, Gregory S. Ellington*, for appellee.