A99A1349. KENT v. A. O. WHITE, JR., CONSULTING ENGINEER, P.C.
(520 SE2d 481)

Judge Harold R. Banke.

Attorney Kent refused to pay for services rendered at his behest by expert witness White, resulting in the latter's professional corporation bringing an action for breach of contract, account stated, and fraud and deceit. White sought compensatory and punitive damages as well as attorney fees. The jury awarded $18,407.75 for breach of contract, $15,000 for fraud, $30,840.87 for attorney fees, $1,288.54 for interest on a commercial account, and $10,000 for punitive damages. Kent appeals, asserting 15 errors.

Construed in favor of the verdict, the evidence showed that Kent hired White to reconstruct an accident so he could testify for Kent's two clients injured in the accident. Because Kent had twice before employed White at his regular hourly rates and paid the same, White did not send Kent his fee schedule. Over the next two and one-half years, White performed services for Kent and sent Kent monthly bills for those services at his hourly rate of $125 per hour. Each invoice clearly stated that the account was due in full upon rendition of the statement, and that unpaid balances would have a service charge of one and one-half percent added each month until paid in full.

Kent never objected to the invoices or the monthly service charges, nor did he express any dissatisfaction with White's services;

he simply refused to pay the bills. White pled with Kent to pay the mounting bill and pointed out in a cover letter that prompt payment was required to avoid the appearance that payment was contingent on the outcome of the trial. Kent asked White to wait until after the first client's trial to receive payment, which White did. When, despite White's testimony, the trial resulted in a defense verdict, Kent hired a second expert witness, Brown, whom Kent told that White had been fired.

Kent told White nothing of this firing, and instead had White perform further services in an attempt to persuade the court to order a new trial, and also had White perform services in preparation for the second client's trial. Keeping White in the dark as to the timing of the second trial, Kent had Brown testify at that trial, which also resulted in a defense verdict. Kent then refused to pay any of the bills of either White or Brown, claiming that payment had been contingent on plaintiffs' verdicts, an arrangement that would be patently unethical. See State Bar Rules & Regulations, Rule 4-102 (d), Standard 58. *Held*:

1. Kent's first six enumerations of error all hinge on the contention that the evidence did not support an award for fraud and deceit.

(a) The elements of a fraud action are an intentional false representation by the defendant designed to induce the plaintiff to act or refrain from acting, upon which the plaintiff justifiably relies, resulting in damage to the plaintiff. *City Dodge v. Gardner*, 232 Ga. 766, 769-770, n. 1 (208 SE2d 794) (1974). Concealing a material fact also constitutes fraud where the defendant is obliged to communicate that fact based on the particular circumstances of the case. OCGA § 23-2-53; *American Petroleum Products v. Mom & Pop Stores*, 231 Ga. App. 1, 5 (1) (497 SE2d 616) (1998). Furthermore, making a promise without a present intent to perform is a misrepresentation of a material fact and will support a cause of action for fraud. *Howard v. Hammond*, 216 Ga. App. 703, 706 (1) (455 SE2d 390) (1995).

Here the evidence supported the findings necessary for fraud and deceit. Based on prior dealings with White, Kent impliedly promised to pay White's invoices in the new case as they were rendered, which developed into an express agreement when he did not object to the numerous monthly invoices so stating. See *Sanders v. Commercial Cas. Ins. Co.*, 226 Ga. App. 119, 122 (2) (a) (485 SE2d 264) (1997). Kent had no intent to perform this promise, for he testified he never intended to pay the invoices unless and until he received a plaintiff's verdict. Moreover, Kent concealed from White that White had been terminated at the end of the first trial, and instead had White perform additional services, including some for the second trial, even though he never intended to pay White for any of these services. Kent's refusal to pay Brown under similar circumstances reflected a

clear intent not to perform and a pattern of concealment and deceit.

(b) Because the evidence supported a fraud action and supported a finding that Kent procured and transacted the contract in bad faith, attorney fees were recoverable under OCGA § 13-6-11. *Kopp v. First Bank of Ga.*, 235 Ga. App. 520, 524 (3) (509 SE2d 384) (1998); *Country Pride Homes v. DuBois*, 201 Ga. App. 740, 741 (2) (412 SE2d 282) (1991). The showing of fraud also justified a punitive damages award. See OCGA § 51-12-5.1 (b).

(c) With regard to its instructions on the measure of compensatory damages arising from fraud, however, the court erred. During its deliberations the jury sent out a question as to how it should determine damages for fraud. Noting it had failed to instruct the jury on this point, the court over objection instructed it that fraud damages were calculated by the enlightened conscience of the jury based on injury to the peace, happiness, or feelings of the plaintiff. This was taken from the language of OCGA § 51-12-6.

But the measure of damages in an action for fraud is the actual loss sustained as a result of the fraud. *Wilson Welding Svc. v. Partee*, 234 Ga. App. 619, 620 (507 SE2d 168) (1998). Moreover, at no point did White claim that the entire injury to him was to his peace, happiness, or feelings, which is when OCGA § 51-12-6 applies. Because the court improperly instructed the jury on this matter, we must reverse the $15,000 fraud portion of the judgment and remand the case for a new trial on the amount of damages for fraud. The liability finding for fraud is not disturbed. Since the punitive damages award is related to the fraud award, and since the attorney fees award may have also been related to the fraud award, these damage portions of the judgment must also be reversed and re-tried. The findings of liability for punitive damages and for attorney fees are not disturbed.

2. Kent contends the court erred in admitting evidence of his failure to pay Brown under similar circumstances. Although similar transactions are generally inadmissible (OCGA § 24-2-2), they are admissible if committed at or about the same time, when the same motive may reasonably be supposed to exist, so as to establish the intent of the defendant in the transaction being tried. *Candler v. Davis & Upchurch*, 204 Ga. App. 167, 169 (3) (419 SE2d 69) (1992). Frequently the defendant's state of mind regarding one act is illustrated by other acts of a similar nature that indicate a general practice or course of conduct or display intent, motive, knowledge, or bad faith. Id.

*Kent v. Brown*, 238 Ga. App. 607 (518 SE2d 737) (1999), rejected this same contention of Kent's when Kent claimed the court hearing Brown's action to recover his expert fees erred in admitting evidence of the failure to pay White. Because of the similarity of the transactions involved and the issues of bad faith and fraud, the court did not

abuse its discretion in admitting the converse evidence here. Id. The fact that the Brown transaction took place subsequent to the transaction being tried does not bar its use. *Harris v. State*, 255 Ga. 500, 502 (3) (340 SE2d 4) (1986); see *Webster v. Boyett*, 269 Ga. 191, 195 (1) (496 SE2d 459) (1998) (trial court has discretion to admit prior and subsequent acts).

3. Kent's motion for a directed verdict on the express contract claim was properly denied. Although pricing was not explicitly discussed in their initial meeting on the new case, Kent's prior conduct of paying White's hourly charges and Kent's receipt of the new bills showing hourly charges and reflecting an understanding that Kent would pay the hourly fees as they were incurred combined to supply this term to the contract, as Kent made no objection to those charges or invoices. See *Sanders*, 226 Ga. App. at 122 (2) (a); *Kay Solar Systems v. Rome Printing Co.*, 160 Ga. App. 825, 826 (1) (287 SE2d 675) (1982).

4. Kent claims the court erred in instructing the jury on quantum meruit. Although not pled in White's complaint, quantum meruit was tried by implied consent when Kent denied the existence of an express contract for the payment for White's services. See OCGA § 9-2-7. This amended the pleadings to include the issue. OCGA § 9-11-15 (b); *Lake Lanier Cottage Owners Assn. v. BMS Enterprises*, 194 Ga. App. 858, 859 (392 SE2d 312) (1990).

5. Kent contends the court erred in allowing White, over objection, to argue that a verdict for Kent would cause Kent to laugh about it. Counsel has ample latitude to argue the conduct or attitude of a party with respect to the case and to make whatever inferences one can draw from such. *Findlay v. Griffin*, 225 Ga. App. 475, 477 (5) (484 SE2d 80) (1997). We discern no manifest abuse of the court's broad and sound discretion in overruling this objection. Id.; cf. *Ga. Power Co. v. Puckett*, 181 Ga. 386, 395 (5) (182 SE 384) (1935).

6. Kent contends the court erred in instructing the jury it could award interest on interest if the principal debt and the interest thereon amounted to a liquidated demand. *Hardy v. G.A.C. Finance Corp.*, 131 Ga. App. 282, 284 (2) (205 SE2d 526), aff'd, 232 Ga. 632 (208 SE2d 453) (1974), held there is no prohibition against charging interest on interest which is past due, where the obligation to pay interest has become a liquidated demand. Statutorily, an owner of a commercial account may charge one and one-half percent monthly interest on that portion of the account that has been due and payable for 30 days or more. OCGA § 7-4-16. Each month White added a service charge of one and one-half percent of the aggregate amount past due from the previous month, which amount included previous service charges. Based on the language in the invoices that overdue balances would be subject to the service charge, the jury could find

this aggregate amount was liquidated and that the one and one-half percent could be added to it. See *Haughton v. Namano, Inc.*, 222 Ga. App. 644, 646-647 (2) (476 SE2d 31) (1996). Moreover, the jury could award pre-judgment interest to the final invoiced amount of $18,407.75 to account for the time between the final invoice and verdict. *Ga. Color Farms v. K.K.L., L.P.* 234 Ga. App. 849, 851-852 (2) (507 SE2d 817) (1998).

7. As the verdict separated out principal and pre-judgment interest, Kent's claim that the verdict form was improper under *Morgan v. J. B. Colt Co.*, 34 Ga. App. 630, 632 (7) (130 SE 600) (1925), is without merit.

The judgment is affirmed in part as to the breach of contract and interest awards. It is also affirmed as to the findings of liability for fraud, punitive damages, and attorney fees. The judgment is reversed in part and the case remanded as to amount of the damages for fraud, attorney fees, and punitive damages.

*Judgment affirmed in part and reversed in part and case remanded. Blackburn, P. J., and Barnes, J., concur.*

DECIDED JUNE 30, 1999 — CERT. APPLIED FOR.

*Reinhardt, Whitley & Wilmot, Glenn Whitley*, for appellant.
*Hatcher, Stubbs, Land, Hollis & Rothschild, William B. Hardegree, Gregory S. Ellington*, for appellee.