**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 29, 2013**

# In the Court of Appeals of Georgia

A12A2550. CRIPPEN v. OUTBACK STEAKHOUSE INTERNATIONAL, L.P., et al.

RAY, Judge.

This case comes to us from an order of the trial court granting summary judgment or partial summary judgment to the Appellees on claims for breach of contract, breach of fiduciary duty, fraud, conspiracy to commit fraud, and setoff. Because we believe that the trial court erred in some of its conclusions, we hereby affirm in part, reverse in part, and remand this case to trial.

On appeal from a grant of summary judgment, we review the evidence de novo, viewing it in the light most favorable to the non-movant, to determine whether a genuine issue of fact remains and whether the moving party is entitled to judgment

as a matter of law.[1] Summary judgment is proper only when no issue of material fact exists and the moving party is entitled to judgment as a matter of law.[2]

So viewed, the evidence shows that Appellant Kevin Crippen ("Crippen")was a long term employee of Appellee Outback Steakhouse International, L.P. ("OSI"), having started at one of its restaurants as a server/bartender in 1990, working his way up the corporate ladder. He was promoted to managerial positions in Florida and then Atlanta, and ultimately, in 2002, was promoted to Vice President of Operations of the Asia Pacific Market and sent overseas. He lived in Japan and Hong Kong from 2002 through 2009 while working for OSI, all the while without a formal, written employment contract. He was paid salary and bonuses for his efforts.

In 2008 and 2009, while working for OSI, Crippen purchased a minority interest in three restaurants in Asia, and purchased interests in or consulted with seven companies that supplied food and other related materials to restaurant operations. OSI was a customer of some of these companies, and to some degree, remains so. Crippen did not disclose his outside interests to OSI.

---

[1] *Rubin v. Cello Corp.*, 235 Ga. App. 250 (510 SE2d 541) (1998).

[2] OCGA § 9-11-56. (Accord) *Field v. Lowery*, 300 Ga. App. 812, 813 (686 SE2d 422) (2009).

In December of 2009, OSI promoted Crippen to Senior Vice President of Operations, and for the first time, he was presented with and executed a written employment agreement. This agreement, the Officer Employment Agreement (the "Employment Agreement"), was dated January 1, 2010. In conjunction therewith, he relocated back to Atlanta, where he worked until he was terminated on November 16, 2010. Crippen's termination came about after OSI discovered his investments in Asia in the three restaurants, as well as his consulting with or interest in companies from whom OSI purchased food products.[3] OSI considered this to be a violation of the 2010 Employment Agreement and its internal ethics policy.

In this action, OSI seeks to require Crippen to pay to it any monies that he made from his side investments and consulting in Asia, as well as any salary or other compensation that it paid to him between 2008 and 2010. While OSI acknowledges that Crippen is entitled to be compensated for a buy-out of his interests in certain limited partnerships related to OSI (hereinafter, the "OSI Limited Partnerships"),

---

[3] These investments were discovered pursuant to an investigation by OSI of plans by Crippen in October of 2010 to purchase an interest in a Chili's restaurant in Hong Kong, which had come to light due to certain e-mails OSI discovered.

which he contractually may not keep due to his termination,[4] OSI seeks an offset of said funds with what it claims Crippen owes to OSI due to his alleged wrongful actions with respect to OSI.

Both Crippen and OSI filed cross motions for summary judgment. From the trial court's grant of summary judgment or partial summary judgment to OSI on certain of its claims, Crippen appeals.

1. Crippen claims that the trial court erred in its conclusion that as a matter of law that he had violated the Employment Agreement. We disagree.

The Employment Agreement included various provisions that would prevent the activities of which OSI now complains. For example, pursuant to ¶ 9(a), Crippen promised that he would not "individually or jointly with others, directly or indirectly, whether for [his] own account or for that of any person or entity, engage in or own or hold any ownership interest in any person or entity engaged in a restaurant business." Further, ¶ 8(c)(ii) includes a provision allowing OSI to terminate Crippen for cause should he conduct himself dishonestly. Pursuant to ¶ 3(d) of the Employment Agreement, Crippen promised to "devote one hundred percent (100%)

---

[4] In 2007, Crippen entered into eleven separate limited partnership agreements with other limited partners of OSI and became a limited partner in each entity. Upon termination, the limited partnership agreements require a buy back of his interests.

4

of [his] full business time, attention, energies, and effort to the business affairs of the Company." Yet, it is undisputed that he failed to comply with these terms. After he signed the Employment Agreement, he continued to own his interests in other restaurants, despite the clear terms of the Employment Agreement, and he did not report such ownership to OSI when required as a part of it annual reporting process. He was hardly honest in this endeavor.

Crippen seeks to excuse this conduct, in part, by claiming (1) that his ownership interest in these other companies occurred before the Employment Contract was executed in 2010, which is true, and (2) that the provisions preventing him from investing in other restaurant businesses are overbroad and illegal under Georgia law as being against public policy. First, while owning an interest in and consulting with other restaurant related businesses could not have been a violation of the Employment Agreement before it was executed, continuing to own that interest thereafter was prohibited. Additionally, pretermitting whether the restriction on investing in other restaurants was overbroad, this argument is waived in that it was not raised in the trial court. "Issues presented for the first time on appeal furnish nothing for us to review, for this is a court for correction of errors of law committed by the trial court where proper exception is taken. One may not abandon an issue in

5

the trial court and on appeal raise questions or issues neither raised nor ruled on by the trial court."[5]

Much of the dispute between the parties in this case centers around the issue of damages, as Crippen claims that OSI had not been damaged by any of his actions or inaction, whether they are wrongful or not. However, it is clear that a lack of damages would not be a bar to a breach of contract claim by OSI. "In every case of a breach of contract, the injured party has a right to damages, but if there has been no actual damage, the injured party may recover nominal damages sufficient to cover the costs of bringing the action.[6]

2. Crippen complains that the trial court erred in granting summary judgment to OSI on its claims for breach of fiduciary duty. We agree.

As stated by the trial court, OSI claims that Crippen violated his fiduciary duty to OSI in that he (1) owned and worked for outside restaurants and suppliers, and (2) that he conducted official OSI business with those outside restaurants and suppliers. As to the latter allegation that he breached his duty by allegedly directing OSI's

---

[5] (Citation and punctuation omitted.) *Assn. Svcs., Inc. v. Smith*, 249 Ga. App. 629 632 (1) (549 SE2d 454) (2001).

[6] OCGA *§ 13-6-6.*

6

business to the outside companies in which he had an interest, the trial court denied OSI's motion for summary judgment; the court found that it was undisputed that OSI's vendors were selected on pricing and quality, and that the decisions were made based thereon. Also, there was disputed testimony as to whether Crippen even participated in the vendor selections by OSI. As there is no appeal by OSI on this point, this issue will remain for the jury to resolve.

The former claim regarding owning/working for outside restaurants is another matter. In holding that OSI is entitled to summary judgment on this theory, the trial court, improperly in our view, relied upon the terms of the Employment Agreement and its requirement that Crippen must apply 100% of his "full business time, attention, energies and effort" to OSI. Clearly, Crippen did not fulfill this contractual term, as the trial court so held and as we have found in Division 1 herein. Yet, this claim is more than a breach of contract.

To prove that Crippen breached his fiduciary duty, OSI must show (1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) damage proximately caused by the breach.[7] Irrespective of damages, there must have been a breach of a

---

[7] (Citation and punctuation omitted.) *Nash v. Studdard*, 294 Ga. App. 845, 849-850(2) (670 SE2d 508) (2008).

duty in the first instance. While beginning in 2010 Crippen's contract may have prevented him from owning an interest in restaurants or companies doing business with OSI, it remains an open question as to whether, and to what extent, that Crippen's outside interests were in any way contrary to, in competition with, or adverse to his employer.

OSI argues that Crippen's payments from these business interests were "kickbacks," but this term is conclusory and self-serving. Indeed, the trial court made it clear that it did not determine that the prices OSI paid for its goods, or the quality of the goods themselves, were anything out of the ordinary or that Crippen had anything to do with the vendors that were selected. It relied merely upon the violation of the contractual "full business time" provision for its ruling. While it may be true that an agent breaches a duty of loyalty owed to his employer by using his position for his own personal benefit *to the detriment of his employer*,[8] the trial court made no such conclusion as to the facts herein. Accordingly, summary judgment on this count is reversed, and this claim is remanded for trial.

---

[8] *Hanson Staple Co., Inc. v. Eckelberry*, 297 Ga. App. 356, 361 (2) (677 SE2d 321) (2009).

3. Crippen claims the trial court erred in granting summary judgment to OSI on its claims for fraud and conspiracy to commit fraud. We agree.

To sustain a claim for fraud, a plaintiff must prove that the defendant made a false representation or concealment of a material fact, with scienter and an intention to induce the plaintiff to act or refrain from acting, justifiable reliance by the plaintiff on the representation or concealment, and resultant damages to the plaintiff.[9] Assuming without deciding whether the other elements of fraud could be established by these facts, at a minimum summary judgement was inappropriate in that OSI did not prove, or at least a question of fact exists, whether OSI was damaged by the alleged fraudulent conduct of Crippen.

In ruling in favor of OSI on these counts, the trial court found that OSI was entitled to the same type of damages that it sought for breach of fiduciary duty; that is, the so called "secret profits" that Crippen made from these outside business between 2008 and 2010, as well as the compensation paid by OSI to Crippen during those years. This holding obviously looks to the language of OCGA § 10-6-31, which states that "[i]f [an agent] shall have violated his engagement, he shall be entitled to

---

[9] *Sun Nurseries, Inc. v. Lake Erma, LLC,* 316 Ga. App. 832, 835 (1) (730 SE2d 556) (2012).

9

no commission." A "breach of fiduciary duty negates the unfaithful agent's right to any compensation . . .. "[10] Yet, by its very terms, this provision can apply only in cases where an employee or agent breaches his duty of loyalty. Neither the trial court nor OSI have cited to, and we cannot so find, any cases where this statutory provision provides a remedy for an ordinary claim of fraud.

Rather, the measure of damages for fraud is the actual loss sustained.[11] As argued by Crippen in his Brief on Appeal, "OSI did not establish any loss of revenue, loss or diversion of customers, loss of business opportunities, loss of employees, or any monetary loss whatsoever occasioned by [his] purported concealment [of his collateral business dealings]." While this remains to be judged by the evidence at trial, it is true that throughout this case OSI has sought merely these "secret profits" that Crippen obtained from the outside companies and the compensation that it has paid to Crippen, without proving a relationship whatsoever to any actual harm or damages that it suffered. At trial, should the other elements of fraud and/or conspiracy

---

[10] *Vinson v. E.W. Bushman, Co.*, 172 Ga. App. 306, 309 (1) (323 SE2d 204) (1984).

[11] *Kent v. White*, 238 Ga. App. 792, 794 (1)(c) (520 SE2d 481) (1999).

to commit fraud be proven, OSI must demonstrate that it suffered actual damages to prevail on these claims.[12]

4. Crippen claims that fact questions exist as to the amount he is due for his ownership interests in the OSI Limited Partnerships. We agree.

Pursuant to Article VII of each of the OSI Limited Partnership agreements, Crippen must surrender his investments therein due to the termination of his employment with OSI. At the same time, he is entitled to be paid for the value of these investments. The agreements set forth an elaborate procedure for the valuation and determination of the price to be paid for these buy backs, which includes, among other things, the work of expert appraisers.

Within its order, the trial court concluded that the value of Crippen's interests in the limited partnerships was $259,071.39. Although this amount was alleged in the Complaint and ratified by OSI's Chief Financial Officer, Howard Leigh, , this amount was disputed by Crippen. There is no evidence in the record, other than the self-serving, unsupported contentions of OSI's Chief Financial Officer of the value of

---

[12] See *Howard v. Sellers & Warren, P.C.*, 309 Ga. App. 302, 307 (2) (709 SE2d 585) (2011). ("In order to prove conspiracy to commit fraud, a plaintiff must show . . . conduct that constitutes a tort. Absent the underlying tort, there can be no liability for civil conspiracy.") (Citations and punctuation omitted).

these interests. Leigh personally performed no calculations, could not name the specific person or persons who did, and could not testify to the specific methodology used in the calculations. His statements amounted to mere hearsay. Evidence on summary judgment is held to the same standards as at trial, and generalized statements and conclusions have no probative value.[13]

A trial is required to set the value of the value of Crippen's interests in the OSI Partnerships, in the absence of an agreement of the parties or the implementation of the process outlined in the limited partnership agreements. Accordingly, the trial court's conclusion as to the value of these interests was in error.

*Judgment affirmed in part, reversed in part, and case remanded. Miller, P. J., and Branch, J., concur.*

---

[13] *Resolute Ins. Co. v. Norbo Trading Corp.*, 118 Ga. App. 737 741 (1) (165 SE2d 441) (1968).