ALLIANCE TRACTOR & IMPLEMENT COMPANY, A
CORPORATION DOING BUSINESS AS CROWN
MANUFACTURING COMPANY, APPELLEE AND
CROSS-APPELLANT, v. LUKENS TOOL & DIE COMPANY,
A CORPORATION, APPELLANT AND CROSS-APPELLEE.

281 N. W. 2d 778

Filed July 31, 1979.  No. 42339.

Harry Meister of Winner, Nichols & Meister, for appellant.

Wright & Simmons and John A. Selzer, for appellee.

Heard before KRIVOSHA, C. J., CLINTON, WHITE, and HASTINGS, JJ., and MURPHY, District Judge.

HASTINGS, J.

Defendant appeals an award of damages in the amount of $92,986.77 in favor of plaintiff entered by the court on a jury-waived trial.  This is the third

appearance of this case in this court. The two previous cases appear under the same title at 194 Neb. 473, 233 N. W. 2d 299 (1975), and 199 Neb. 489, 260 N. W. 2d 193 (1977), wherein the factual background is set forth. However, in a hopeful effort to facilitate an understanding of this rather complicated and protracted litigation, some of the facts will be repeated as well as supplemented by additions. The previous cases will be referred to as Case I and Case II.

Plaintiff had been involved in the farm implement and, to some extent, the manufacturing business in Alliance since 1950. Defendant was a manufacturing engineer operating in Gering. Plaintiff has sold at retail many hay rake teeth, but in early 1971, because of the difficulty in finding an adequate supply, became interested in manufacturing them itself. An agreement was entered into between the parties whereby defendant agreed to build a machine capable of turning out such teeth for which defendant was to be paid an agreed amount. The details of that agreement and facts leading up to the original lawsuit are set forth in detail in Case I.

The initial litigation was for damages to the plaintiff for breach of warranty, but the trial court found against the plaintiff and for the defendant on its cross-petition for the balance claimed to be owed defendant for the construction of the machine. On appeal this court reversed the judgment of the trial court and remanded for a new trial, specifically finding: (1) That there was no substantial performance by the defendant, and (2) that there was no waiver of performance by plaintiff.

Upon a retrial, Case II, the District Court sustained plaintiff's motion for summary judgment "to the extent that issues of substantial performance by the Defendant, acceptance by the Plaintiff or waiver, except waiver of the time of performance by the Plaintiff are now eliminated from the lawsuit." Subsequently, the remaining issue of damages was

tried to a jury resulting in a verdict in favor of plaintiff. Defendant's counterclaim for the balance due on the contract was not submitted. Defendant filed a motion for a new trial alleging errors in instructions as to the proper measure of damages, which was granted.

Plaintiff appealed to this court and we affirmed. We found first of all that plaintiff had accepted the machine sometime prior to May of 1974, in spite of its nonconformance, but that the jury was not instructed to determine any date or fact as to acceptance. We also said: "The jury was not instructed as to what constituted acceptance of nonconforming goods, nor that the measure of damages for breach of warranty is the difference *at the time and place of acceptance* between the value of the goods accepted and the value they would have had if they had been as warranted."

Following argument and submission of the case, the trial judge stated: "I do view the first opinion of the Nebraska Supreme Court as saying, in essence, that upon the record they saw, there was no doubt but what the machine that was put in the plant over at Alliance had never been demonstrated to do what the written contract said it was going to do, and they therefore said, in that event, the defendant is liable to the plaintiff for whatever damage resulted from that, in accordance with the rules of the Uniform Commercial Code." He then went on to announce from the bench his decision and reasons therefor, as follows:

(1) Plaintiff accepted the machine as nonconforming goods on November 14, 1973.

(2) The value of the machine if it had been as warranted was $40,000, the value, as it was, amounted to $25,563, or a difference of $14,437.

(3) There was no proof of incidental damages.

(4) Consequential damages resulting from loss of profits, limited to the year 1974, were $105,000.

(5) Because of changes made in the design of the machine at plaintiff's request, the contract price became $37,681.55 rather than the original $25,000, $15,000 of which plaintiff previously paid.

(6) Adding the damages set forth in items (2) and (4) above, less $3,768.68 realized by plaintiff from the sale of substandard teeth, less the remaining unpaid balance of $22,681.55 still due defendant on the contract under (5) above, plaintiff's total damages for breach of warranty are $92,986.77.

Defendant assigns 29 separate errors. However, many of them are repetitious and redundant. Generally, they may be condensed into: (1) A request to reconsider our decision in Case I regarding waiver of performance by the plaintiff; (2) disagreement as to the date of acceptance; (3) insufficiency of the evidence to support a judgment for loss of profits; and (4) failure to find that plaintiff did not "cover" within the meaning of section 2-712 (1), U. C. C.

In a law action tried to the court without a jury, the findings of the court have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. McDowell Road Associates v. Barnes, 198 Neb. 207, 252 N. W. 2d 151 (1977). With this in mind it is necessary to examine some of the testimony.

Regarding waiver of performance, the additional evidence of the second and third trials added nothing substantial to that upon which our conclusions in Case I were based. There we said "the evidence indicated that the longest the equipment ever operated on any day without a major breakdown was * * * less than 5 hours on a day when 580 teeth were produced. There is no evidence in the record from which the court could infer that the plaintiff waived compliance * * * which required * * * a machine that would produce 100 rake teeth per hour for 100 hours. Evidence indicates the rake tooth manufactured did not

conform in one specific area to the specifications. * * * The plaintiff has a machine not yet operable, and of no benefit to him until it is so. We find no substantial performance. * * * Lukens, is not now in a position to claim that the modifications suggested and executed by the man he recommended to the plaintiff relieved him from his own obligation to fulfill his contract." Alliance Tractor & Implement Co. v. Lukens Tool & Die Co., 194 Neb. 473, 233 N. W. 2d 299 (1975). This was based on evidence adduced at a trial in April of 1974. Subsequent evidence revealed that although defendant continued to contend that the machine could be made operable in a matter of a few weeks, the fact remained that he had been unable to do so. There is no merit to defendant's claims that plaintiff waived performance or that the defendant had fully performed.

Without going into detail, the record is replete with evidence that plaintiff tried again and again to get the defendant to make the machine operable. Section 2-606, U. C. C., provides in part that after a reasonable opportunity to inspect the goods, acceptance of the goods occurs when the buyer signifies to the seller that the goods are conforming, or that he will take or retain them in spite of their nonconformity. Defendant urges that the date of acceptance was April 28, 1972, when all of the machinery had been delivered to the plaintiff. However, the evidence is undisputed that after this date portions of it had been returned to the defendant for further alterations or modifications and according to plaintiff's evidence, at least, this was because it didn't conform to specifications. It is also without dispute that sometime in the spring of 1973 the plaintiff filed a replevin action to have the machinery returned to it. The evidence is somewhat less than precise when plaintiff actually regained possession and unequivocally accepted it as nonconforming. The trial judge made a finding based on a motion filed by the

plaintiff on November 14, 1973, stating that was the date of acceptance. This is a finding of fact based on disputed evidence and, not being clearly wrong, will not be disturbed.

Defendant attacks the evidence as to lost profits as being insufficient and speculative. Plaintiff's evidence through Gordon J. Keeley, one of its two principal stockholders, was that it had been selling rake teeth for many years as a retailer. It had also done some manufacturing in years past, but not of this particular nature. In 1971 the availability of rake teeth had become curtailed primarily because one or both of the only two sources of manufacturing in the North American continent had temporarily, at least, discontinued making them. Based upon Keeley's knowledge of the market and the production capacity of the machine as suggested by defendant, plaintiff projected the manufacture and sale of 100,000 teeth in 1972, 133,000 in 1973, 150,000 in 1974, and 100,000 in 1975. Keeley calculated the costs of production at 70 cents per tooth and estimated the sale price at $1.40. Actually, at the time of his testimony in 1976, teeth were selling for something over $3.

Supportive of Keeley's testimony was that of Freeman Rowse, a manufacturer of hay rakes in Burwell, Nebraska, who had been, or still was, one of plaintiff's several rake teeth customers. He said that in 1973 he had purchased 64,000 teeth for use in his business, had 150,000 on order for the year 1974, but that International Harvester and Beal, the only two sources available, could not furnish his demands. He said that they had only received 30,000. He testified that as of April 1974 he would purchase 25,000 teeth from plaintiff if they would meet specifications.

Defendant's own testimony was perhaps even more favorable to the plaintiff. First of all, he felt the plaintiff's evidence as to cost of each unit was

too high, and even spoke in terms of 40 or 45 cents per tooth, but that the 70-cent cost was very reasonable as was the projected sale price of $1.40 per tooth. As of 1971, he had spent many hours surveying the market and he felt plaintiff "had a straight shot to success," that he could sell "a million of them if he wanted to make them." He said the same market conditions prevailed in 1973 and that 1974 was even worse, meaning it was getting more difficult to find a source of supply for rake teeth.

"Lost profits, proximately caused by a seller's breach of warranty, are consequential damages which may be recovered under section 2-715, U. C. C., if proof of such loss is sufficient. * * *

"Roto-Flex cites the general rule that lost profits of a new business may not be recovered because such damages are too speculative and conjectural. * * * The rule that lost profits from a business are too speculative and conjectural to permit the recovery of damages therefor, however, 'is not a hard and fast one, and loss of prospective profits may nevertheless be recovered if the evidence shows with reasonable certainty *both* their *occurrence* and the *extent* thereof * * * Uncertainty as to the *fact* of whether any damages were sustained at all is fatal to recovery, but uncertainty as to *amount* is not.' * * * Therefore, although in many, if not most, instances lost profits from a new business are too speculative and conjectural to permit recovery of damages, 'where the evidence is available to furnish a reasonable certain factual basis for computation of probable losses, recovery of lost profits cannot be denied, even though a new business venture is involved.' " El Fredo Pizza, Inc. v. Roto-Flex Oven Co., 199 Neb. 697, 261 N. W. 2d 358 (1978).

In the first place, this was not altogether a new business. Rather, it would appear to be more a new source of supply merged with an established distribution system for the same product. Beyond that,

we do feel that the evidence, if believable, was sufficient to furnish a reasonable certain factual basis for the computation of probable losses. This was a fact question which the trier of fact resolved in favor of the plaintiff.

Whether defendant's claimed error regarding plaintiff's failure to "cover" is available to him because not pleaded as an affirmative defense is of no consequence. This is true because it was considered, it was a factual question, and the trial court did find that the damages for loss of profits were limited to the year 1974 because "the buyer could have reasonably prevented any additional losses by cover."

The remaining errors claimed by the defendant have been examined and found to be without merit.

Plaintiff has cross-appealed complaining that the trial court erred in not awarding incidental damages and in finding a modification of the terms of the contract supporting a payment to defendant of more than the original $25,000 contract price. Additionally, the plaintiff claims the trial court further erred in departing from the law of the case in Case I where we said that "All of the efforts of the parties were directed in an attempt to make the machine operate" and therefore none of defendant's activities were in connection with any agreed modification. The answer to both of these allegations is that factual questions were presented which were resolved in favor of the defendant. Additionally, as to the second contention, "The rule that the trial court, as well as this court, is bound by a legal principle once determined in a case does not apply to decisions rendered on questions of fact." System Meat Co. v. Stewart, 190 Neb. 682, 211 N. W. 2d 902 (1973).

The findings of the trial court are not clearly wrong and therefore its action and judgment are affirmed.

AFFIRMED.

MURPHY, District Judge, dissents.