959 P.2d 830

Gayle N. HIRAHARA, as Prochein Ami for Laurie M. Hirahara, Bradley S. Hirahara, and Lisa S. Hirahara, Minors; Myles M. Hirahara; Shizue Hirahara; and Shirlyn H. Young as Personal Representative of the Estate of Harvey S. Hirahara, Deceased, Plaintiffs–Appellants,

v.

Kazushi TANAKA, M.D., Defendant–Appellee,

and

Island Anesthesia, Inc.; John W. Pearson, M.D.; Castle Medical Center, John Does 1–10; Jane Does 1–10; Doe Partnerships 1–10; Doe Corporations 1–10; Roe "Non–profit" Organizations 1–10; and Roe Governmental Agencies 1–10, Defendants.

No. 20429.

Supreme Court of Hawai'i.

June 9, 1998.

Reconsideration Denied June 25, 1998.

L. Richard Fried, Jr.,John D. Thomas, Jr., and Patrick F. McTernan (of Cronin, Fried, Sekiya, Kekina & Fairbanks), Honolulu, for plaintiffs-appellants.

John S. Nishimoto, Stephen D.Dyer, and Gary S. Miyamoto (of Ayabe, Chong, Nishimoto, Sia & Nakamura), Honolulu, for defendant-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

NAKAYAMA, Justice.

Plaintiffs-appellants Gayle Hirahara, et al. [collectively Hiraharas], appeal from an adverse judgment after jury trial in their medical malpractice action. The sole issue raised by the Hiraharas is whether the trial court erred by instructing the jury that a treating physician is not necessarily negligent for "errors in judgment." The Hawai'i appellate courts have not previously addressed this issue. We perceive a clear modern trend disfavoring this language as confusing and misleading. Because cogent reasons support disallowing this language, we hold that the trial court erred when it gave such an instruction in the instant case. Therefore, we vacate the judgment in favor of defendant-appellee Kazushi Tanaka, M.D. and remand for further proceedings.

## I. BACKGROUND

On August 8, 1994, Harvey Hirahara was referred to Kazushi Tanaka, M.D., for treatment of a rectal abscess. Dr. Tanaka determined that immediate surgery was necessary to drain the abscess. The proposed surgical procedure is normally routine and uncomplicated. Dr. Tanaka expected to complete the surgery within ten to fifteen minutes.

Dr. Tanaka was assisted in the surgery by John W. Pearson, M.D., an anesthesiologist. Harvey was positioned in a jackknife position, with his head and feet below his raised buttocks. Dr. Pearson injected Harvey with the anesthetic at 1:15 p.m. Dr. Pearson mistakenly prepared a hyperbaric anesthetic, with a specific gravity heavier than the spinal fluid.[1] Because of Dr. Pearson's error, and the fact that Harvey's head was below the level of the injection site, the anesthetic flowed downwards to Harvey's brain.

Dr. Pearson was situated close to Harvey's head while Dr. Tanaka performed the surgery. A device known as a pulse oximeter, which measures the amount of oxygen in a patient's blood, was attached to Harvey. This device has an audible alarm that sounds if the oxygen level drops to 85% saturation. The pulse oximeter alarm first rang at approximately 1:26 p.m. Harvey was conscious at this point and, when Dr. Pearson addressed him, was able to take a breath which improved his blood oxygenation. It is unclear whether the surgery had started or not at this point. However, after Dr. Tanaka began the surgery, the pulse oximeter alarm sounded again. Harvey was unresponsive. Dr. Pearson began mask-ventilating Harvey in an attempt to improve his blood oxygenation. Dr. Tanaka asked Dr. Pearson if there was something wrong and if he should stop the operation. Dr. Pearson asked Dr. Tana-

---

1. Dr. Pearson testified at trial that he intended to make the anesthetic isobaric, with the same specific gravity as the spinal fluid.

ka how much longer the operation would take. Dr. Tanaka replied that it would only be a couple of minutes. It is unclear from the record if there was a further response from Dr. Pearson. Dr. Tanaka then completed the operation.

Immediately after Dr. Tanaka finished the operation, Harvey was turned over onto his back and found to be in cardiac arrest. Attempts to resuscitate Harvey were unsuccessful and Harvey remained in a coma until August 12, 1994, when life support was terminated due to a lack of brain activity.

The Hiraharas filed a complaint in the Circuit Court of the First Circuit on March 15, 1995. The complaint alleged that defendants Dr. Tanaka, Dr. Pearson, Island Anesthesia, Inc., and Castle Medical Center were liable for medical malpractice in their treatment of Harvey. All defendants except Dr. Tanaka were dismissed with prejudice by stipulation on July 11, 1996. Jury trial proceeded against Dr. Tanaka. The plaintiff's theory of liability at trial was that Dr. Tanaka negligently failed to perceive the seriousness of Harvey's condition and terminate surgery in time to get Harvey out of the jackknife position and revive him before brain damage had become irreversible.

At trial, both the Hiraharas and Dr. Tanaka presented expert witness testimony. The expert witnesses were divided in their opinions as to whether Dr. Tanaka's performance fell below the relevant standard of care. Russell Carlson, M.D., opined that Dr. Tanaka's failure to recognize Harvey's deterioration quickly enough to avert his hypoxic brain damage fell below the standard of care. Peter Halford, M.D., opined that the anesthesiologist, not the surgeon, is responsible for monitoring the oxygen level and respiration and that it was reasonable for Dr. Tanaka to complete the surgery in the absence of an order by Dr. Pearson to discontinue.

Following closing arguments, the court instructed the jury. The following jury instructions, requested by Dr. Tanaka, were given over the Hiraharas' objections:

[Dr. Tanaka's Proposed Instruction No. 7, as modified] Where there is more than one recognized method of treatment, a physician is not negligent if, in exercising his best judgment, he utilizes one of the recognized methods of treatment so long as it conforms to the standard of care.

[Dr. Tanaka's Proposed Instruction No. 9, as modified] A physician is not necessarily negligent because he errs in judgment or because his efforts prove unsuccessful. The physician is negligent if the error in judgment or lack of success is due to a failure to perform any of the duties defined in these instructions.

[Hereinafter Instruction No. 7 or 9]. After deliberation, the jury found, by special verdict, that Dr. Tanaka was not negligent. On August 13, 1996, the circuit court entered judgment in favor of Dr. Tanaka. The Hiraharas timely appealed. On appeal, the Hiraharas argue that: (1) Instructions No. 7 and 9 were misleading and confusing and should not have been given to the jury and (2) even presuming that the instructions were not misleading or confusing, there was no basis in this trial to give such instructions. We need only address the Hiraharas' first point of error.

## II. DISCUSSION

■ "When jury instructions, or the omission thereof, are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." *Craft v. Peebles*, 78 Hawai'i 287, 302, 893 P.2d 138, 153 (1995) (citations and internal quotation marks omitted).

■ As an initial matter, Dr. Tanaka alleges that the Hiraharas failed to properly object to the jury instructions pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 51(e). Although the Hiraharas did object to these instructions, Dr. Tanaka claims that the specific grounds for their objections were significantly different from the arguments which they now raise on appeal.

■ HRCP Rule 51(e) provides that "[n]o party may assign as error the giving or the refusal to give ... an instruction ... unless he objects thereto before the jury retires to consider its verdict, stating distinctly the

matter to which he objects and the grounds of his objection." A general objection is insufficient to satisfy the requirements of HRCP Rule 51(e). *Murray v. Hicks*, 49 Haw. 374, 376–77, 418 P.2d 12, 14 (1966). However, this court has previously stated that "HRCP Rule 51(e) may be construed in a liberal manner." *Chung v. Kaonohi Center Co.*, 62 Haw. 594, 603, 618 P.2d 283, 291 (1980).

■ It is now firmly established in this jurisdiction that, where potential error "affects the integrity of the jury's findings[,][o]nce all the evidence has been presented, it becomes the court's fundamental duty to properly instruct the jury on the law on the precise issues of fact it is to decide." *Montalvo v. Lapez*, 77 Hawai'i 282, 291, 884 P.2d 345. 354, *reconsideration denied*, 77 Hawai'i 489, 889 P.2d 66 (1994) (footnote omitted). This is because

> [t]he trial court is the *sole source* of all definitions and statements of law. . . . It is the *duty of the circuit judge* to see to it that the case goes to the jury in a clear and intelligent manner, so that they may have a clear and correct understanding of what it is they are to decide, and [the judge] shall state to [the jury] fully the law applicable to the facts.

*Id.* at 291 n. 13, 884 P.2d at 354 n. 13 (quoting *Briones v. State*, 74 Haw. 442, 472–73, 848 P.2d 966, 980 (1993) (Levinson, J., concurring) (citations omitted) (internal quotation marks omitted) (emphasis in original)).

■ "Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial." *Tabieros v. Clark Equip. Co.*, 85 Hawai'i 336, 350, 944 P.2d 1279, 1293 (1997) (quoting *State v. Arceo*, 84 Hawai'i 1, 11, 928 P.2d 843, 853 (1996) (citations and internal quotation marks omitted)).

The Hiraharas objected to Instruction No. 7 on the basis that:

> This instruction is not supported by the evidence in this case. This is not a case where the issue is a surgeon's choice between two recognized methods of treatment or alternative recognized methods of treatment. Here the physician did nothing in response to the decedent's condition; and, therefore, this instruction is inapplicable to the facts of the case.

> In addition, your Honor, as phrased, instructing the jury that a physician is not negligent for exercising his best judgment, that is in essence directing a verdict for the physician/surgeon in the event the jury finds that there has been testimony that they're supporting what he did in the case. And its improper to not at least give the jury the choice to consider whether the physician is or is not negligent, but takes the choice away from them.

As to Instruction No. 9, the objection was that "[t]he instruction is pure argument. It's not necessitated as an instruction to the jury by the facts of this case."

We hold that the Hiraharas' objections were sufficient to trigger the duty of the circuit court to scrutinize the challenged instructions and ensure that the jury was correctly instructed on the law in a clear and intelligent manner. The Hiraharas preserved their contention on appeal that the challenged instructions were prejudicially misleading and confusing.

*A. Instruction No. 9 was prejudicially misleading.*

■ Numerous other jurisdictions have addressed jury instructions which inform the jury that a physician does not commit medical malpractice by making an error in judgment. In recent years, a large number of courts to address this issue have held that such instructions are improper.[2]

---

2. *See, e.g., Logan v. Greenwich Hosp. Ass'n*, 191 Conn. 282, 465 A.2d 294 (1983); *Day v. Morrison*, 657 So.2d 808 (Miss.1995); *Wall v. Stout*, 310 N.C. 184, 311 S.E.2d 571 (1984); *Parodi v. Washoe Medical Center*, 111 Nev. 365, 892 P.2d 588 (1995); *Kurzner v. Sanders*, 89 Ohio App.3d 674, 627 N.E.2d 564 (1993); *Rogers v. Meridian* *Park Hospital*, 307 Or. 612, 772 P.2d 929 (1989); *Shamburger v. Behrens*, 380 N.W.2d 659 (S.D. 1986); *Rooney v. Medical Center Hospital of Vermont*, 162 Vt. 513, 649 A.2d 756 (1994); *Watson v. Hockett*, 107 Wash.2d 158, 727 P.2d 669 (Wa. 1986).

The Supreme Court of Oregon, in *Rogers v. Meridian Park Hospital,* 307 Or. 612, 772 P.2d 929 (1989), engaged in a well-reasoned analysis of the flaws in this language. The *Rogers* court analyzed the instructions as follows: [3]

> To state that a doctor is not liable for bad results caused by an.*error* of judgment makes it appear that some types of negligence are not culpable. It is confusing to say that a doctor who has acted with reasonable care has nevertheless committed an *error* of judgment because untoward results occur. In fact, bad results notwithstanding, if the doctor did not breach the standard of care, he or she by definition has committed no error of judgment. The source of the problem is the use of the word "error." Error is commonly defined as "an act or condition of often ignorant or imprudent deviation from a code of behavior." Webster's Third New International Dictionary 772 (unabridged 1971). [This instruction] could lead the jury to believe that a judgment resulting from an "ignorant or imprudent deviation from a code of behavior" is not a breach of the standard of care.
>
> . . . . If the term "judgment" refers to choices between acceptable courses of treatment, then the term "error in judgment" is a contradiction in itself. Use of any acceptable alternatives would not be an "error." Witnesses may continue to use terms such as "exercise of judgment." But the court should not instruct the jury in such terms; such instructions not only confuse, but they are also incorrect because they suggest that substandard conduct is permissible if it is garbed as an "exercise of judgment."

772 P.2d at 932–33 (emphasis in original).

We agree with the reasoning of the *Rogers* court. We· perceive the source of confusion engendered by the use of "error in judgment" language as a failure to specify from which relative temporal vantage point the doctor's selection of a particular course of treatment was "error." It is not negligent for a physician, based on the knowledge that he reasonably possesses at the time, to select a particular course of treatment among acceptable medical alternatives. This is true even though, in hindsight, the choice was inappropriate. However, it is a breach of the duty of care for a physician to make an erroneous choice if, at the time he made the choice, he should have had knowledge that it was erroneous. This proposition is difficult to explain to a lay jury. Moreover, it is adequately covered by alternate instructions that a physician's liability cannot be premised solely on a harmful result if he or she conforms to the professional standard of care. Therefore, we hold that any jury instruction that states that a physician is not necessarily liable for an "error in judgment" is confusing and misleading and should not be given to the jury.

### B. *"Best judgment" instructions are misleading.*

■ Instruction No. 7, which utilized the term "best judgment" is suspect because· it could improperly lead the jury to view a physician's behavior from a subjective, rather than an objective standard. Therefore we hold that this language should be avoided in future cases.

In *Rooney v. Medical Center Hosp. of Vermont,* 162 Vt. 513, 649 A.2d 756 (1994), the Supreme Court of Vermont considered a jury instruction which stated:

> In performing a medical service, a physician is obligated to use her *best judgment*

---

**3.** The jury instructions challenged in *Rogers* stated that:

> A physician is charged with applying without error those principles and learnings that are settled and agreed upon by all members of the medical profession. In some cases, there may be reasonable differences of opinion among members of the medical profession as to the nature of the patient's condition or the proper course of treatment. When there is such a difference of opinion, the physician must exercise reasonable judgment. A physician is liable for an error of judgment if the physician fails to act with reasonable care and skill in exercising that judgment. *A physician is not liable for an error in judgment if the physician acts with reasonable care and skill in exercising such judgment.*
> (Emphasis added.)

*and to use reasonable care in the exercise of her knowledge and ability.* The rule requiring use of her *best judgment* does not make her liable for a mere error of judgment, provided she exercises reasonable judgment in bringing to bear the level of knowledge, skill and care previously described.

*Id.*, 649 A.2d at 759 (emphasis in original). The *Rooney* court held that:

A plain reading of [the first] sentence, in light of the [statutory] standard of care, leads to the conclusion that even if Dr. Kristensen's "knowledge and ability" did not measure up to the required degree, she is not liable as long as she did her best and was reasonably careful under the circumstances.... This is not the law. [The statutory standard of care] imposes an *objective* standard, and measures the defendant doctor's conduct against what a reasonable doctor would have done in the same or similar circumstances.... The message intended by the giving of the instruction—that a doctor may choose among several proper alternatives, even though the one chosen leads to an unfortunate result—is not self-evident.

*Id.* at 760.

■■■ In Hawai'i, "[i]t is well settled that in medical malpractice actions, the question of negligence must be decided by reference to relevant medical standards of care[.]" *Craft v. Peebles*, 78 Hawai'i 287, 296, 893 P.2d 138, 149 (1995). The relevant standard of care is an objective one. The jury's analysis of a defendant physician's actions must be confined to a determination of whether his actions fell below this standard. Informing the jury that a physician is not negligent for utilizing his or her best judgment to choose among acceptable alternatives is unnecessary. The jury must focus on whether the physician breached the standard of care. His or her exercise of "best judgment" is superfluous to this determination.

■■■ Dr. Tanaka claims that the challenged instructions "instructed the jury that Dr. Tanaka's liability to [the Hiraharas] could not be decided on the basis of the success or failure of the operation." We disagree with Dr. Tanaka's interpretation. We do not, by this opinion, cast any doubts on the validity of a jury instruction that states that a physician is not an insurer of her patient's health and that a physician is not necessarily negligent simply because of an unfortunate result. We agree that "[a] physician is not an insurer of the results of his diagnosis and treatment. The mere proof of an unfavorable result, without more, will not be enough to establish a physician's liability." David Louisell & Harold Williams, Medical Malpractice § 4.02 (1997). This is a separate and distinct issue from that considered herein and inapplicable to the present case.

### III. CONCLUSION

For the foregoing reasons, we vacate the judgment of the circuit court in favor of Dr. Tanaka and remand for further proceedings. On the briefs: