44 P.3d 274

Janie DITTO, Plaintiff–Appellee,

v.

John A. McCURDY, Jr., M.D.,
Defendant–Appellant,

and

Karla Scarpiova, Defendant.

No. 22875.

Supreme Court of Hawai'i.

April 8, 2002.

Richard H. Grover, on the briefs, Honolulu, for defendant-appellant.

David C. Schutter and Christopher A. Dias (of Schutter, Dias, Smith & Wong), on the briefs, Honolulu, for plaintiff-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, and ACOBA, JJ.; and RAMIL, J., dissenting.

Opinion of the Court by MOON, C.J.

Following a jury trial upon remand from this court, the First Circuit Court, Honorable Gary W.B. Chang presiding, entered judgment in favor of plaintiff-appellee Janie Ditto and against defendant-appellant John A. McCurdy, Jr., M.D. (Dr. McCurdy) for punitive damages in the amount of $676,700. The trial upon remand was conducted pursuant to this court's decision in *Ditto v. McCurdy*, 86 Hawai'i 84, 947 P.2d 952, *reconsideration denied*, 86 Hawai'i 84, 947 P.2d 952 (1997) [hereinafter, *Ditto I* ], in which we affirmed Dr. McCurdy's liability for punitive damages but remanded for a new trial to determine the amount of those damages. On appeal in the instant case, Dr. McCurdy argues that the trial court erred in permitting a passage of this court's decision in *Ditto I,* which described the evidence supporting Dr. McCurdy's liability for punitive damages, to be read to the jury because the passage could have unduly influenced the jury's assessment of the evidence. For the reasons discussed herein, we agree with Dr. McCurdy, vacate the trial court's judgment, and remand for further proceedings.

## I.  BACKGROUND

This medical malpractice case originally arose out of a breast augmentation surgery and several follow-up surgeries and procedures performed by Dr. McCurdy in 1986 and 1987. Further details are described in *Ditto I* and in the corresponding Intermediate Court of Appeals (ICA) opinion. *See Ditto I* and *Ditto v. McCurdy,* 86 Hawai'i 93, 947 P.2d 961 (App.1997). Ditto originally sued Dr. McCurdy in 1989, alleging claims for relief sounding in negligence and fraud and seeking, *inter alia,* punitive damages. In June 1992, a jury returned a special verdict, finding Dr. McCurdy liable to Ditto for negligence and fraud and awarding, *inter alia,* punitive damages. The jury awarded a total of $1,003,500 in general and special damages for negligence, $600,000 in punitive damages, and an additional $400,000 for

fraud. Judgment was entered pursuant to the special verdict, and Dr. McCurdy appealed. The appeal was initially decided by the ICA, *see id.*, and ultimately by this court in *Ditto I*. *Ditto I* affirmed the judgment as to the negligence claim, but held that Ditto's fraud claim failed as a matter of law. *Ditto I*, 86 Hawai'i at 91–93, 947 P.2d at 959–61. Consequently, this court reversed the judgment as to fraud and the corresponding $400,000 in damages. *Id.* at 86, 947 P.2d at 954. Moreover, because it could not be ascertained how much of the punitive damages award was attributable to Dr. McCurdy's allegedly fraudulent conduct, this court vacated the punitive damages award. *Id.* However, we determined that there was "an abundance of clear and convincing evidence upon which the jury could rely to find that Dr. McCurdy's care of Ditto" was grossly negligent and that such evidence was "overwhelming" and of an "egregious nature[.]" *Id.* at 92, 947 P.2d at 960. Accordingly, this court affirmed Dr. McCurdy's liability for punitive damages on the grounds that the jury most certainly had found Dr. McCurdy to be grossly negligent notwithstanding the erroneous fraud instructions. *Id.* at 91–92, 947 P.2d at 959–60. Therefore, we remanded the case for retrial on the issue of the *amount* of punitive damages only. *Id.* at 93, 947 P.2d at 961.

In motions in limine before retrial, Ditto sought to preclude Dr. McCurdy from introducing evidence concerning the medical standard of care as to Dr. McCurdy's actions and to preclude Dr. McCurdy from arguing that the jury could award zero dollars in punitive damages. Ditto pointed out that, pursuant to this court's decision in *Ditto I*, Dr. McCurdy's liability for punitive damages had already been determined. Accordingly, Ditto sought to prevent Dr. McCurdy from relitigating the issue. Ditto acknowledged that, in order to determine the amount of punitive damages, "the jury must hear what evidence provides the basis for the award." Ditto maintained, however, that "the ICA and the Hawai'i Supreme Court have already done that for the jury. The ICA and the Supreme

Court have set out the precise evidence which formed the basis for the punitive damages award[,]" citing to a portion of this court's opinion in *Ditto I* (described *infra* at 126, 44 P.3d at 277) that quoted, with approval, the ICA's rendition of the evidence supporting Dr. McCurdy's liability for punitive damages. Ditto argued that:

> As a valid, final and binding statement of the law in this state and in this case, the jury can simply be read this portion of [*Ditto I*], whether by the Plaintiff or by the Court, and will thus be furnished with the evidence that served as the basis for the punitive damages award itself.

At a pretrial hearing, Ditto requested that the trial court take judicial notice of the aforementioned passage in *Ditto I*. Dr. McCurdy objected on the grounds that *Ditto I* did not identify the specific facts conclusively supporting the first jury's findings of gross negligence. After considering these arguments and reviewing additional memoranda submitted by the parties, the trial court ultimately ruled that: (1) Dr. McCurdy could not introduce evidence concerning the standard of care as to his actions; (2) Dr. McCurdy could argue to the jury that it had the discretion to award zero dollars in punitive damages; and (3) it would take judicial notice of this court's discussion in *Ditto I* of the evidence supporting liability for punitive damages.

Trial commenced on June 3, 1999. During opening statements, Ditto told the jury that "[y]ou'll hear what the Supreme Court, your Supreme Court, the highest judicial officers in your judicial system, said about Dr. McCurdy's conduct." During her case-in-chief, Ditto testified, *inter alia*, that Dr. McCurdy: did not ask her questions about her medical history during her initial consultation with him; did not explain the risks of the initial procedure or of any of the subsequent procedures she underwent to deal with complications from the original procedure; discharged her from the recovery room after she experienced complications from the initial procedure, telling her that he had to make room for other patients;[1] permitted

---

1. The surgical and other procedures in question were "outpatient" procedures that were performed in Dr. McCurdy's office.

his unsupervised assistant to suture a wound site that had opened; and allowed her to remain conscious during one procedure when, impliedly, he should not have.

On cross-examination, Ditto acknowledged that: she was "groggy" and "not fully awake" during one of the conversations that she described in her testimony; she could not completely remember the details of her discussion with Dr. McCurdy concerning informed consent and acknowledged that Dr. McCurdy "probably" told her of at least one potential complication of the initial procedure; some of her testimony concerning the informed consent issue may have been inconsistent with testimony she provided in the first trial; and Dr. McCurdy had offered to pay for follow-up treatment with other surgeons with whose treatment recommendations he agreed.

Following Ditto's testimony, the trial court took judicial notice of the disputed passage in *Ditto I*, explaining to the jury:

> The Plaintiff's entitlement or right to recover punitive damages has already been affirmed by the Hawai'i Supreme Court; and in the process of the Hawai'i Supreme Court issuing its written decision on the question of punitive damages, the Court made certain observations regarding the state of the evidence relating to the entitlement to punitive damages.
>
> And so at this time, the Court will read from page 92 of the [Supreme] Court's decision, a limited passage relating to the circumstances, the factual bases that could have—the facts which could have provided the factual basis for the punitive damage award.[2]

Reading nearly verbatim from *Ditto I*, the court then stated:

> "We determine that there was indeed an abundance of clear and convincing evidence upon which the jury could rely to find that Dr. McCurdy's care of Ditto from the outset was grossly negligent and,

therefore, reckless and consciously indifferent to the consequences that could arise.["]

> "For example, there was substantial evidence produced at trial, which, if believed, revealed that the medical history portion of Dr. McCurdy's consultation was woefully inadequate.["]

> "Dr. McCurdy did not perform"—excuse me—"Dr. McCurdy did not properly inform Ditto of the risks or complications involved in the initial surgical procedure or any of the subsequent surgical procedures. He sent Ditto home after her second surgery despite continued complications to make room for other patients in his recovery room.["]

> "He failed to properly suture her incisions, resulting in constant [bloody] discharges. He failed to document medications allegedly prescribed to Ditto. He ... allowed his medical assistant to suture Ditto's incision when he was not physically present." [3]

In his defense, portions of Dr. McCurdy's testimony from the transcript of the previous trial were read to the jury.[4] The testimony stated or implied, *inter alia*, that Dr. McCurdy: completed an adequate initial medical evaluation; explained the risks of the initial and most of the subsequent procedures to Ditto; did not believe he needed to get consent in another instance because the circumstances constituted an emergency; denied telling Ditto that she had to leave the recovery room to make room for other patients; and allowed his assistant to suture Ditto because he was out of town at the time, and then only after first offering Ditto the option of having another physician suture her. Dr. McCurdy also introduced into evidence portions of the medical record which tended to support his testimony that he had, in fact, performed a more detailed medical examination than Ditto claimed and that he had discussed the risks of various procedures with her in detail.

---

**2.** Out of the presence of the jury, Dr. McCurdy again objected at this time.

**3.** After initially reading from *Ditto I*, the trial court corrected and struck a portion of its reading, as indicated in the above description by the

bracket and the ellipse, respectively. The statement described above is the corrected version of the court's reading.

**4.** Dr. McCurdy did not attend the trial in the current case.

In closing argument, Ditto correctly pointed out that one of the factors the law uses to determine the amount of punitive damages owed is the "degree of malice, oppression, or gross negligence" attributable to Dr. McCurdy's conduct. Discussing this factor, Ditto pointed to her testimony that Dr. McCurdy had not conducted an appropriate history and had not properly informed her of the risks of the procedures. Ditto then argued:

> *You also heard this from another reliable source, the Hawai'i Supreme Court, the highest court in your state. The Supreme Court and, in fact, the Chief Justice said* that, quote, Dr. McCurdy's care of Ditto from the outset was grossly negligent; and, therefore, reckless and consciously indifferent to the consequences that could arise. Sounds like a pretty great degree of malice, oppression, or gross negligence. In fact, those are the exact words the Supreme Court uses, gross negligence.

> *The Chief Justice also said* that `Dr. McCurdy's medical history consultation was woefully inadequate. That he did not properly inform [Ditto] of the risks or complications involved in the first surgery or any of the four surgeries that he performed on her. That he sent her home after her second surgery, *even though she had continued complications, was not ready to go, but he needed to make room for other patients.*

(Emphases added.)

In his closing argument, Dr. McCurdy accused Ditto's counsel of "embellish[ing]" some of the facts in the case. Dr. McCurdy proceeded step-by-step through his own testimony, attempting to show that he acted with appropriate concern at each instance when Ditto experienced complications. He pointed to inconsistencies in Ditto's testimony and argued that, although Ditto was understandably upset about the complications resulting from her surgery, Dr. McCurdy's conduct was not uncaring, indifferent, or in any way malicious so as to justify any amount of punitive damages greater than zero.

In rebuttal, Ditto argued:

According to [counsel for Dr. McCurdy], I've embellished the facts of this case; and the interesting thing is I didn't have to. *What I told you about the facts of this case comes straight from the Hawai'i Supreme Court's opinion.* What the Court read to you on the first day of trial is how I relayed the facts to you earlier. What the Court read to you from the opinion is evidence.

[Counsel for Dr. McCurdy] contends there is no evidence of indifference, gross negligence, et. cetera. I quoted to you from the opinion, which is evidence for you to consider, in which the Supreme Court describes his conduct as grossly negligent, reckless and consciously indifferent. His conduct was so bad I didn't have to embellish it. That's how they wrote it.

(Emphasis added.) A short while later, Ditto argued that:

> *Two people, the Supreme Court and Janie Ditto, tell the same story that you heard.* You hear a third story by someone who's not even here . . . .

(Emphasis added.)

The trial court instructed the jury in relevant part that:

> The Court must take judicial notice of facts or events which are matters of common knowledge. When the Court declares that it will take judicial notice of some fact or event, the *jury must accept the Court's declaration as evidence and regard as conclusively proved the fact or event which the Court has judicially noticed.*

>     . . . .

> In this case, the issue of Defendant's liability for punitive damages has already been decided in favor of the Plaintiff. Therefore, the only question for you to decide is the amount of damages to award to Plaintiff.

(Emphasis added.) During deliberations, the jury requested "a copy of the statement drafted by the Supreme Court that was read at the trial relating to the Defendant's conduct[,]" which the trial court provided.

The jury returned a verdict for $676,700. Final judgment for this amount was entered on July 14, 1999. Following the trial court's

denial of his motion for a new trial, Dr. McCurdy timely appealed.

## II. STANDARD OF REVIEW

■ Different standards of review are applied to trial court decisions regarding the admissibility of evidence, depending on the requirements of the particular rule of evidence at issue. "When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard. However, the traditional abuse of discretion standard should be applied in the case of those rules of evidence that require a 'judgment call' on the part of the trial court." *Kealoha v. County of Hawai'i*, 74 Haw. 308, 319–20, 844 P.2d 670, 676 (1993). The question whether a particular fact is a proper subject for judicial notice is a question of law that is reviewed by this court de novo. *See In re Estate of Herbert*, 90 Hawai'i 443, 466, 979 P.2d 39, 62, *reconsideration denied*, 90 Hawai'i 443, 979 P.2d 39 (1999).

## III. DISCUSSION

■ Dr. McCurdy contends that it was improper for the trial court to take judicial notice of this court's opinion in *Ditto I* by reading the passage that described the evidence upon which this court affirmed liability for punitive damages. According to Dr. McCurdy, this court's description of the allegations did not conclusively establish their truthfulness. Consequently, Dr. McCurdy essentially submits that taking judicial notice of the passage unduly influenced the jury by implying that the allegations had been conclusively determined to be true. We agree.

■ To examine Dr. McCurdy's contentions, we turn to the doctrine of "the law of the case." This court recently described the doctrine as "a determination of a question of law made by an appellate court in the course of an action becomes the law of the case and

may not be disputed by a reopening of the question at a later stage of the litigation." *Fought & Co., Inc. v. Steel Eng'g and Erection, Inc.*, 87 Hawai'i 37, 48–49, 951 P.2d 487, 498–99 (1998) (quoting *Tabieros v. Clark Equip. Co.*, 85 Hawai'i 336, 352 n. 8, 944 P.2d 1279, 1295 n. 8 (1997) (in turn quoting *Weinberg v. Mauch*, 78 Hawai'i 40, 47, 890 P.2d 277, 284 (1995))) (citations and internal quotation marks omitted). The doctrine applies "to issues that have been decided either expressly or by necessary implication." *Fought*, 87 Hawai'i at 49, 951 P.2d at 499 (quoting *Tabieros* and *Weinberg, supra*) (internal quotations omitted). Further, "the law of the case concept applies to single proceedings, and operates to foreclose reexamination of decided issues either on remand or on a subsequent appeal but does not encompass issues presented for decision but left unanswered by the appellate court." *Weinberg*, 78 Hawai'i at 47, 890 P.2d at 284 (citing *Pegues v. Morehouse Parish School Bd.*, 706 F.2d 735, 736 (5th Cir.1983)) (internal quotation marks, brackets, and ellipses omitted).

■ There is no question that *Ditto I* unequivocally affirmed that Dr. McCurdy had been grossly negligent and was liable for punitive damages. This legal determination is therefore the law of the case and cannot be relitigated. Instructing the jury on this point—as the trial court did—was proper and was all that was required. The disputed passage, however, went further. It contained the reasoning of this court which referred to, as examples, evidence pertaining to six specific allegations upon which the *Ditto I* jury could have determined that Dr. McCurdy was grossly negligent.[5] The allegations concern factual matters that comprise all or part of the evidence supporting this court's determination that Dr. McCurdy was grossly negligent. The parties dispute the preclusive effect imparted upon this evidence by *Ditto I*.[6]

---

5. *Ditto I* actually refers to seven allegations, but one of those allegations—that Dr. McCurdy had failed to properly diagnose an infection—was not read to the jury because no evidence was presented concerning this allegation.

6. Ditto, in particular, asserts that the doctrine of collateral estoppel, or issue preclusion, is applicable. "Collateral estoppel is an aspect of res judicata which precludes the relitigation of a fact or issue which was previously determined in a prior suit on a different claim between the same parties or their privies." *Dorrance v. Lee*, 90

Some jurisdictions have restricted the application of the law of the case doctrine to questions of law. *See, e.g., Lee v. Lee,* 44 S.W.3d 151, 153 (Tex.Civ.App.2001); *Fortner v. Cousar,* 992 P.2d 697, 700 (Colo.App.1999); *Alliance Tractor & Implement Co. v. Lukens Tool & Die Co.,* 204 Neb. 248, 281 N.W.2d 778, 783 (1979). Other jurisdictions, however, have applied the doctrine to questions of fact as well as questions of law. *See, e.g., State v. Williams,* 52 S.W.3d 109, 124 (Tenn. Crim.App.2001); *United States v. Real Property Located at Incline Village,* 958 F.Supp. 482, 487 (D.Nev.1997); *Coty v. Ramsey Assocs., Inc.,* 154 Vt. 168, 573 A.2d 694, 696 (1990); *People v. Smith,* 72 Ill.App.3d 956, 28 Ill.Dec. 766, 390 N.E.2d 1356, 1361 (.1979). Hawai'i cases utilizing the doctrine thus far appear to have applied it only to questions of law, although the issue of its applicability to questions of fact has not been directly addressed. *See, e.g., Fought,* 87 Hawai'i at 49–50, 951 P.2d at 499–500 (judgment for amount of damages "plus interest" did not constitute law of the case with respect to liability for attorneys' fees); *Tabieros,* 85 Hawai'i at 352, 944 P.2d at 1295 (possibility that manufacturer may be liable for punitive damages for failure to build a straddle carrier with certain safety features did not "imply" as a matter of law that the manufacturer had a duty, at a later date, to retrofit the straddle carrier with these same features); *Weinberg,* 78 Hawai'i at 47–48, 890 P.2d at 284–85 (counterclaims not addressed during first appeal not foreclosed on remand by law of the case doctrine); *Glover v. Fong,* 42 Haw. 560, 578–79 (1958) (this court's holding in first appeal that plaintiff contractor could

sue city auditor in tort for auditor's refusal to pay on contract constituted the law of the case in the second appeal).

In this case, however, assuming *arguendo* that the law of the case doctrine encompasses factual matters, it would still not serve to bar relitigation of the allegations discussed in the disputed passage of *Ditto I.* In context, the disputed passage in *Ditto I* merely examines whether there was sufficient evidence to support a finding of liability for punitive damages. This court's conclusion, which was contained in a portion of the opinion not read to the jury, was that, given the sum total of these allegations, it was clear that the jury most certainly would have found Dr. McCurdy grossly negligent notwithstanding any possible confusion due to erroneous fraud instructions. *See Ditto I,* 86 Hawai'i at 92, 947 P.2d at 960. This court did not expressly affirm a finding that all of the allegations discussed had in fact occurred, or, for that matter, that any particular allegation discussed had occurred. Nor was it necessary for all of the allegations discussed—or for any particular allegation discussed—to be true in order to sustain Dr. McCurdy's liability for punitive damages. In other words, the truthfulness of allegations discussed in the commentary was neither "decided expressly[,]" nor "by necessary implication." *Fought,* 87 Hawai'i at 49, 951 P.2d at 499. Accordingly, this court's decision affirming Dr. McCurdy's liability for punitive damages did not conclusively establish any of the allegations mentioned and, thus, cannot be construed as the law of the case in this respect.[7]

Hawai'i 143, 148, 976 P.2d 904, 909 (1999) (emphasis omitted) (quoting *Foytik v. Chandler,* 88 Hawai'i 307, 314–315, 966 P.2d 619, 626–627 (1998)). This case, however, involves essentially a continuation of the *same* suit and the *same* claim: Dr. McCurdy's liability for punitive damages. The doctrine of collateral estoppel is thus inapplicable. In reality, however, the principles underlying the two doctrines are similar. *See generally Overseas Shipholding Group, Inc. v. Skinner,* 767 F.Supp. 287,.296 (D.D.C 1991) (describing the law of the case doctrine as "a form of issue preclusion within the same case").

7.  The dissent writes that, "[i]n the absence of an affirmance by this court [in *Ditto I*] that the facts as determined by the jury [were] clearly erroneous, this court could not have properly deter-

mined that the plaintiff [was] entitled to punitive damages." Dissent at 132, 44 P.3d at 283. As indicated above, the jury in the original trial did not "determine" any specific facts for this court to "affirm" or to "reverse" on appeal.

The dissent relies upon *Kent v. A.O. White, Jr., P.C.,* 253 Ga.App. 492, 559 S.E.2d 731 (2002) (*Kent II* ) to support its position that "the trial court's reading of the law and the facts from this court's prior opinion does not constitute reversible error." *See* dissent at 133, 44 P.3d at 284. The dissent presumes that *Kent II* reaches a result that is contrary to our case. *See* dissent at 132–33, 44 P.3d at 283–84. For the reasons discussed below, we are not certain that *Kent II* is contrary to our holding, nor would we be persuaded by *Kent II* even if it were.

Having determined that the disputed passage in *Ditto I* did not conclusively establish that the allegations were true, we must examine whether they were presented to the jury as such. We believe they were. The trial court instructed the jury that the effect of its taking judicial notice of the disputed passage was that the jury must "regard as conclusively proved the fact or event which the Court has judicially noticed." The trial court further explained to the jury that it was relating "the *facts* which could have provided the factual basis for the punitive damage award." (Emphasis added.)[8] Furthermore, Ditto's pretrial argument, upon which the trial court apparently relied in making its pretrial rulings, also suggested that Ditto's intent was to use the passage to prove that the allegations actually occurred. *See supra* at 125, 44 P.3d at 276 (noting Ditto's contention that "[t]he ICA and the Supreme Court have set out the precise evidence which formed the basis for the punitive damages award"). Moreover, because the only information the jury needed to be told—that this court had affirmed Dr. McCurdy's liability for punitive damages—was contained in the first paragraph of the disputed passage, the only conceivable purpose for introducing the subsequent paragraphs was to use them as substantive evidence in support of the allegations discussed therein. Finally, Ditto argued to the jury in the instant case that the disputed passage contained the "facts" as coming "straight from the Hawai'i Supreme Court's opinion." *See supra* at 127, 44 P.3d at 278. Consequently, we hold that the trial court erred in taking judicial notice of this court's discussion in *Ditto I* concerning the sufficiency of the evidence necessary to affirm Dr. McCurdy's liability for punitive damages and in permitting Ditto to present the evidence in that discussion as conclusively determined facts.[9]

■ Ditto maintains that the trial court properly took judicial notice of the disputed passage as conveying conclusively determined facts is not an issue on appeal, nor was there even an objection voiced at trial." Dissent at 133, 44 P.3d at 284. We disagree. As the foregoing paragraph and the background section describing the pretrial motions demonstrate, *see supra* at 125, 44 P.3d at 276, Ditto sought all along to use the specific disputed passage as a means of demonstrating to the jury that this court had concluded that the allegations within the passage were true. The record demonstrates that all of the parties and the trial court understood this.

Moreover, the pretrial ruling that the passage would be read was an unequivocal ruling that, by itself, was sufficient to preserve the issue for appeal. *See Craft v. Peebles*, 78 Hawai'i 287, 295, 893 P.2d 138, 146 (1995); *Page v. Domino's Pizza, Inc.*, 80 Hawai'i 204, 205 n. 1, 908 P.2d 552, 553 n. 1 (App.1995); *Lussier v. Mau–Van Dev. Inc.*, 4 Haw.App. 359, 393–94, 667 P.2d 804, 826 (1983). Furthermore, Dr. McCurdy again objected "to the reading of anything" when the passage was read at trial. Under the circumstances, Dr. McCurdy's objection was sufficiently specific to preserve the issue for appeal. *Cf. Hirahara v. Tanaka*, 87 Hawai'i 460, 462–63, 959 P.2d 830, 832–33 (1998) (objection to one jury instruction on the grounds that it was "not supported by the evidence in the case" and to another jury instruction on the grounds that it was "pure argument" "not necessitated ... by the facts of [the] case" were sufficient to preserve for appeal the contention that the instructions were "misleading and confusing").

---

In *Kent v. A.O. White, Jr., P.C.*, 238 Ga.App. 792, 520 S.E.2d 481 (1999) (*Kent I*), the Georgia Court of Appeals affirmed a defendant's liability for fraud, punitive damages, and attorney's fees but remanded for determination of the amount of damages because the trial court incorrectly instructed the jury on how to calculate the damages. *Kent I*, 520 S.E.2d at 484. On appeal after the retrial, the defendant argued that the trial court erred in reading to the jury a portion of the opinion in *Kent I* "explaining and limiting the issues that they were to decide on retrial[.]" *Kent II* at 493, 559 S.E.2d 731. The court in *Kent II* affirmed based upon the conclusory reasoning that the "law and the facts read to the jury" were the law of the case. *See id.* at 493–494, 559 S.E.2d 731. Because the court in *Kent II* did not specify which portion of *Kent I* was read to the jury, *see id.* at 493–494, 559 S.E.2d 731, we have no idea whether, analyzing the same passage, we would conclude that the passage was the law of the case. Moreover, *Kent II* contains no analysis concerning why the unidentified disputed passage constituted the law of the case. *See id.* Consequently, we have no idea whether *Kent II* is contrary to our holding or whether we would agree with the analysis even if it was clearly articulated. Accordingly, *Kent II* is unpersuasive.

8. Given the foregoing two sentences, we disagree with the dissent that the trial court did not present the allegations as "facts." *See* dissent at 133, 44 P.3d at 284.

9. The dissent contends that "[w]hether the court erred in permitting Ditto to present the disputed

passage in *Ditto I* pursuant to Hawai'i Rules of Evidence (HRE) Rule 202(b) (1993). HRE Rule 202(b) states:

> Mandatory judicial notice of law. The court shall take judicial notice of (1) the common law, (2) the constitutions and statutes of the United States and of every state, territory, and other jurisdiction of the United States, (3) all rules adopted by the United States Supreme Court or by the Hawai'i Supreme Court, and (4) all duly enacted ordinances of cities or counties of this State.

Ditto submits that, pursuant to HRE Rule 202(b)(1), *Ditto I* is part of the common law of this state, and, therefore, the trial court was required to take judicial notice of it. Ditto is correct that *Ditto I* is part of the common law of this state. The common law has been described as the "sum total of a people's past legal experience or as their legal heritage and background[.]" *O'Brien v. Walker*, 35 Haw. 104, 116 (1939). It includes "the entire wealth of received tradition and usage, 'fundamental principles, modes of reasoning, and the substance of its rules as illustrated by the reasons on which they are based, rather than the mere words in which they are expressed.'" *See Housing Finance and Dev. Corp. v. Ferguson*, 91 Hawai'i 81, 89–90, 979 P.2d 1107, 1115–16 (1999) (citing *Territory v. Alford*, 39 Haw. 460, 466 (1952) (quoting *Dole v. Gear*, 14 Haw. 554, 561 (1903))). In a broad sense, then, HRE Rule 202(b)(1) mandates that the trial court was required to take judicial notice of *Ditto I*. However, the trial court's error was not that it recognized *Ditto I* as part of the common law of this state, but that it improperly conveyed the disputed passage in *Ditto I* as having preclusive effect of the facts to be determined when the passage should have been understood as merely establishing that there was sufficient evidence to support liability for punitive damages. HRE Rule 202(b)(1) does not mandate that a trial court improperly convey the meaning of an earlier case. Accordingly, HRE Rule 202(b)(1) is inapposite to this case.

In light of our holding that the trial court erred by permitting Ditto to present the disputed passage as conveying conclusively determined facts, we next address whether the trial court's error was harmful. *See* Hawai'i Revised Statutes (HRS) § 641–2 (1993).[10] As noted earlier, the proper measurement of the amount of punitive damages is the degree of the defendant's malice, oppression, or gross negligence that forms the basis for liability for punitive damages and the amount of money required to punish the defendant. *Kang v. Harrington*, 59 Haw. 652, 663, 587 P.2d 285, 293 (1978). In accordance with this, the trial court properly instructed the jury that:

> The amount you are to award in punitive damages depends upon the degree of malice, oppression or gross negligence that forms the basis for the award and the amount of money required to punish the [d]efendant in light of his financial condition and to deter future conduct.

In determining the degree of malice, oppression, or gross negligence attributable to the defendant, the analysis focuses on the defendant's state of mind at the time of the act. *See id.* Testimony as to Dr. McCurdy's actions was thus important as a means of inferring Dr. McCurdy's state of mind at the time of the actions in question.

In that regard, Ditto's testimony in this case conflicted with Dr. McCurdy's testimony in several material instances, which would have influenced the jury's assessment of Dr. McCurdy's state of mind. These included claims that Dr. McCurdy had not bothered to perform an adequate medical assessment, did not obtain proper consent from Ditto on several occasions, prematurely discharged Ditto from the recovery room to make room for other patients, and callously allowed an unsupervised assistant to treat her. The passage from *Ditto I*, which implied to the jury that these facts had been conclusively determined, bolstered Ditto's testimony on all of these points at the expense of Dr. McCurdy's testimony. Moreover, Ditto expressly argued that this court's opinion was determinative of

---

10. HRS § 641–2 provides, in relevant part, that "[n]o judgment, order or decree shall be reversed, amended or modified for any error or defect unless the court is of the opinion that it has injuriously affected the substantial rights of the appellant."

the foregoing facts. Finally, the fact that the jury asked to review the disputed passage during deliberations suggests that the jury attached importance to this court's discussion of the allegations. Accordingly, we hold that the trial court's error in taking judicial notice of the disputed passage in *Ditto I* affected Dr. McCurdy's substantial rights and was, therefore, harmful.

Moreover, the importance of considering Dr. McCurdy's state of mind cannot be over-emphasized because if all that was required was for the court to read the disputed passage, as the dissent seems to suggest, the passage could not provide the jury with any reasonable basis to determine the *amount* of damages. Actual testimony that would establish what Dr. McCurdy said, when he said it, how he appeared when he said it, and other similar actions is the means by which the jury can infer the degree of oppression, malice, or gross negligence—a key factor in determining the amount of the award. If so, in the presence of testimony from both parties, the passage itself was superfluous and, as indicated, only served to bolster Ditto's testimony at the expense of Dr. McCurdy's.

## IV.  CONCLUSION

Based on the foregoing, we vacate the trial court's judgment awarding $676,700 in punitive damages to Ditto and remand for retrial on the amount of punitive damages.

Dissenting Opinion of RAMIL, J.

I respectfully dissent because I disagree that the allegations concerning the factual basis for our determination that Dr. McCurdy was grossly negligent are not also law of the case. As noted by the majority, "the disputed passage ... examines whether there was sufficient evidence to support a finding of liability for punitive damages." Majority at ——, 44 P.3d at 280. This court concluded that "there was an abundance of clear and convincing evidence" for the jury to find Dr. McCurdy grossly negligent. *Ditto v. McCurdy*, 86 Hawai'i 84, 92, 947 P.2d 952, 960 (1997) [hereinafter *Ditto I* ]. In the absence of an affirmance by this court that the facts as determined by the jury are clearly erroneous, this court could not have properly

determined that the plaintiff is entitled to punitive damages. *Cf. Ditto I*, 86 Hawai'i at 92, 947 P.2d at 960 ("We hold, therefore, that the trial court properly allowed the issue of punitive damages to be considered by the jury and that the jury did not abuse its discretion in making the award.") Thus, the factual basis for this court's conclusion must also be law of the case.

The Georgia Court of Appeals decided a case similar to the present case. In *Kent v. A.O. White, Jr. Consulting Engineer, P.C.*, 238 Ga.App. 792, 520 S.E.2d 481 (1999) [hereinafter *Kent I* ], the Court of Appeals held that "Kent was liable in some amount of punitive damages, which [was] conclusive of the issue of liability for punitive damages in some amount and [could not] be re-litigated." *Kent v. A.O. White, Jr. Consulting Engineer, P.C.*, 253 Ga.App. 492, 493, 559 S.E.2d 731, 733 (2002) [hereinafter *Kent II* ]. Thus, the court "returned the case for jury determination of the amount of punitive damages to be awarded in the enlightened conscience of fair and impartial jurors." *Id.* After the re-trial, Kent appealed to the Court of Appeals, arguing that "the trial court erred in reading to the jury a portion of the [appellate court's] opinion in explaining and limiting the issues that they were to decide on the re-trial." *Id.* The court reasoned that

In this case, the trial court read the law and facts to the jury from the [sic] this Court's prior opinion as determined applicable for this case and thus, limited and defined this jury's special duties and responsibility on retrial of damage issues only. The reading from this Court's opinion defined for the jury what their limited role would be and did not involve facts that they were to decide in this new trial ....

Thus, the court rejected Kent's argument, and held that "[t]o charge the jury on the law, and even the facts, as affirmed on appeal is not reversible error where such facts have been precluded from re-litigation under the law of the case." *Id.*

The present case is entirely analogous to the case before the Georgia Court of Appeals. The trial judge read the law and the

facts to the jury from this court's prior opinion, which limited the jury's role on remand to determination of the amount of punitive damages owed. This court's prior opinion thereby precluded re-litigation of the facts, and thus also became law of the case. Accordingly, as reasoned in *Kent II,* the trial court's reading of the law and the facts from this court's prior opinion does not constitute reversible error.

I also note that even without characterizing the facts as law of the case, this court cannot properly hold that the trial court erred. This is because, assuming that the disputed passage does not conclusively establish the facts of the case, the trial court's recitation to the jury did not present the allegations any differently than we did in our opinion. In fact, the trial court emphasized that the facts may not have been conclusively established. The trial court stated, "And so at this time, the Court will read from page 92 of the [Supreme] Court's decision, a limited passage relating to the circumstances, the factual bases that *could have*—the facts which *could have* provided the factual basis for the punitive damage award." *See* majority at 126, 44 P.3d at 277 (emphasis added). In reading the passage, the trial court quoted our opinion verbatim: "For example, there was substantial evidence produced at trial, which, *if believed,* revealed that the medical history portion of Dr. McCurdy's consultation was woefully inadequate." *See* majority at 126, 44 P.3d at 277 (emphasis added). Thus, the majority's characterization directly contradicts the majority's interpretation that "the disputed passage in *Ditto I* did not conclusively establish that the allegations were true ...." majority at 130, 44 P.3d at 281; *see also id.* at 129, 44 P.3d at 280 ("This court did not expressly affirm a finding that all of the allegations discussed had in fact occurred, or, for that matter, that any particular allegation discussed had occurred."). It

is inconceivable how on one hand, the passage does not conclusively establish the allegations as true, but on the other hand, reading the passage to the jury does.

Furthermore, the majority improperly relies on Ditto's use of the passage to find error with the trial court's taking of judicial notice. *See* majority at 130, 44 P.3d at 281 ("[T]he trial court erred in ... permitting Ditto to present the evidence in that discussion as conclusively determined facts."). Whether the court erred in permitting Ditto to present the disputed passage as conveying conclusively determined facts is not an issue on appeal, nor was there even an objection voiced at the trial. Interestingly, the majority conceded that "[i]n a broad sense, then, HRE Rule 202(b)(1) mandates that the trial court was required to take judicial notice of *Ditto I.*" Majority at 131, 44 P.3d at 282. An alleged subsequent misuse of the dispute passage does not discharge the trial court from its initial and separate duty to take judicial notice.

Finally, it is difficult to argue that the excerpt did not adequately place the facts in context. In fact, before the court read the passage to the jury, the trial counsel for Defendant stated, "I don't object to the specific passage. I object to the reading of anything; but if something is going to be read, I have no objection to that passage." Tr. 6/3/99 at 104.

Accordingly, I would hold that the trial court did not err in taking judicial notice of our opinion in *Ditto I.*